Barber *vs.* State.

---

JOSEPH A. BARBER *vs.* THE STATE OF MARYLAND.

*Bigamy, a Felony— What a sufficient Indictment for Bigamy— When Exceptions in a Statute must be Negatived in an Indictment—Proof under an Indictment for Bigamy.*

The British Statute, 1 Jac. 1, ch. 11, making bigamy a felony, is applicable to this State and is still in force, modified by the Act of 1809, ch. 138, as to the punishment of the offence but not as to the grade of the crime.

It is not necessary to the sufficiency of an indictment for bigamy that it should allege either that the party indicted knew at the time of the second marriage that his former wife was then living; or that she was not beyond seas; or that she had not absented herself for the continuous period of seven years before the second marriage

Where the enacting clause of a statute is complete and the provisos making exceptions follow as distinct clauses of the statute, it is not necessary to negative the exceptions in the indictment, but the facts raising the exception relied on, must come from the defence.

Where there is an exception so incorporated with the enacting clause of the statute that the one cannot be read without the other, there the exception must be negatived in the indictment.

If upon a trial for bigamy, it were proved by the accused that he and his wife had lived separate and apart for the period of seven years immediately preceding the second marriage, it would be incumbent on the prosecution to show that during that time, he was aware of her existence; and in the absence of such proof he would be entitled to an acquittal. This is a principle applicable to the proof, and not to the frame of the indictment.

WRIT OF ERROR to the Circuit Court for Charles County.

The plaintiff in error was indicted in the Court below, and in the indictment it was charged that he did on a day named, marry a certain woman named, and that he afterwards, on a day named, *feloniously* did marry and take as his wife another woman named, the first being then living. The traverser demurred to the indictment. The Court overruled the demurrer and the traverser pleaded not guilty, was tried and convicted. From the judgment entered in favor of the State, the traverser, by petition to the Court below, as upon writ of error, brought the record for review into this Court. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*J. M. Munroe,* for the plaintiff in error.

The act of marrying a second wife during the life-time of a first wife is not, *per se,* a crime; for the marriage relation may have been terminated as to the first wife by a divorce *a vinculo,* or the first wife may have absented herself so long beyond seas, &c., as to raise the legal presumption of her death.

The indictment in this case, neither avers the subsistence of the first marriage, nor negatives the exception which is

expressly provided by the Maryland statute, (*Code, Art. 30, sec. 11,*) in case the wife has so absented herself beyond seas, &c., as to raise the legal presumption of her death.

If, then, it were no crime on the part of this defendant to marry a second wife, even during the subsistence of the first marriage, provided the first wife had absented herself beyond seas, unless he *knew* that she was still living, and the indictment does not negative this exception in the statute, it is necessary to allege that he knew his first wife to be still alive; for in the absence of both these averments, the innocence of the defendant is perfectly consistent with every allegation in the indictment. There must be something to show the guilty intention of the party. As to the necessity of averring knowledge on the part of the defendant, see *Whar. Cr. Law,* (*6th Ed.,*) *Vol. III, sec.* 2638.

Was it necessary to negative the exception in sec. 11, of Art. 30 of Code, with reference to the absence of the wife beyond seas, &c., or was it a matter to be pleaded by the defendant? See *Whar. Cr. Law,* (*6th Ed.,*) *Vol. I, secs.* 378, 379, 614; *Rawlings vs. State,* 2 *Md.,* 201.

Bigamy is not a felony under the laws of this State. 4 *Black. Com.,* 94, 98; *Wharton's Crim. Law, Bk.* 1, *ch.* 1, *sec.* 2; 1 *Hale's P. C.,* 708; 1 *Hawk. P. C., ch.* 40, *sec.* 2.

*Bigamy was not a felony* at the common law, for it was an offence of ecclesiastical cognizance only, and not punishable in the temporal Courts. 1 *Russ. Crimes,* 187; *Bacon's Abridg., "Bigamy;"* 4 *Black. Com.,* 163.

Bigamy was made a felony by the Act of 1 Jac. I, ch. 11; and by the Provincial Legislature that Act was declared to be in force in Maryland in 1706.

Ch. KILTY in 1810, arranged this statute of 1 Jac. I, ch. 11, in his *"Report of Statutes,"* among those *"found applicable but not proper to be incorporated"* in the body of the Statute Law of Maryland.

The statute of Jac. I, ch. 11, is not in *Alexander's British Statutes,* and Art. 30, sec. 11, of the Code, is in the words of the Act of 1809, c. 138, sec. 7, from which it has been codified.

*Charles J. M. Gwinn, Attorney-General,* for the State.

It appears by the case of *Nicholson vs. Lyme,* 1 *Cro. Eliz., Part* 1, *p.* 94, that bigamy was, before 1 James I, ch. 11, a "spiritual fault," and not an offence punishable by the common law Courts. This "spiritual fault" was made a felony by the statute of 1 James I, ch. 11.

By the Act of 1706, ch. 8, the Act of Parliament last cited, and every article, clause, matter and thing in said Act contained, were declared to be in full force to all intents and purposes within the Province of Maryland. The offence of bigamy was, therefore, a felony in Maryland from the year 1706, until the adoption of our State Constitution of 1776.

It was a statute which had been practiced under in the Province of Maryland before it was formally adopted as a. Colonial Act in 1706. *Kilty's Report on English Statutes,* 170; *U. S. vs. Jennegen,* 4 *Cranch C. C. Rep.,* 120.

The statute of 1 James I, ch. 11, must be accounted, therefore, among those English Statutes to the benefit of which the people of Maryland were declared to be entitled by the Third Article of the Declaration of Rights, prefixed to the Constitution of 1776. *Patterson vs. Winn,* 5 *Peters,* 241; *State vs. Buchanan,* 5 *H. & J.,* 355, 356; *Dashiell vs. Atty. General,* 5 *H. & J.,* 402: *State of Md. vs. Bank of Md.,* 6 *G. & J.,* 225, 226.

When the Act of 1809, ch. 138, section 7, was passed, altering the punishment of bigamy, the nature of the offence was not changed. It remained a felony. 3 *Coke's Inst.,* 89.

The Act of 1809, ch. 138, sec. 7, did not cover the whole subject embraced by the Act of 1 James I, ch.

11, because it did not define the offence of bigamy anew. Both statutes could stand together. One defined the nature of the offence; the other prescribed the penalty. *Dugan vs. Gittings,* 3 *Gill,* 154; *Railroad Co. vs. Canal Co.,* 4 *G. & J.,* 128; *Bishop on Statutory Crimes,* 123, 155, 166; *Henderson's Tobacco,* 11 *Wallace,* 652, 657; *Wood vs. U. S.,* 16 *Peters,* 342, 362; 11 *Modern,* 150; *Maxwell on Interp. of Statutes,* 66, 148, 149; *Gough vs. Pratt, Adm'r of Kent,* 9 *Md.,* 532.

The statute 1 James I, ch. 11, although superseded first by the Act of 1809, ch. 138, and afterwards by the Code in Art. 30, sec. 11, in so far as that Act and such Code prescribed a different punishment for the offence of bigamy, remains in force as a statute defining the nature of the offence itself.

It is one of those statutes which the Constitutions of 1850, 1864 and 1867 have maintained in force in this State.

It was not necessary that the indictment should charge that the appellant knew, at the time of his marriage with the woman last named, that his first wife was living. *Murray vs. The Queen,* 7 *Adol. & Ellis, N. S.,* 706.

Neither was it necessary that the indictment should state that the alleged first wife of the appellant, was not beyond the seas, or had not absented herself in any part of the United States or elsewhere, for seven years together; or, that if she had so absented herself, the appellant knew her to be alive.

It was the duty of the appellant to know whether his first wife was alive or not; and the law infers, if she was alive, that he had a knowledge of such fact.

The absence of a wife from her husband, for seven consecutive years, beyond seas, or in a different part of the United States, or elsewhere, without the knowledge of her husband that she remained alive, are, if he marries while she is, in fact, alive, matters which, under settled

rules of pleading, need not be noticed in the indictment. These circumstances, if they be true, constitute the defence of the accused. *Thibault vs. Gibson*, 12 *M. & W.*, 94, 95; 1 *Williams' Saund.*, 262, (*a;*) 1 *Chitty on Criminal Law*, (*5th Am. Ed.*,) 283, (*b*,) m. 284.

ALVEY, J., delivered the opinion of the Court.

The plaintiff in error was indicted for bigamy, and he entered a demurrer to the indictment, and the demurrer having been overruled by the Court, he pleaded not guilty, and was tried and convicted. He has brought the case here as on writ of error, to have the judgment on demurrer reviewed; and whether there be error in that judgment is the only subject of decision by this Court.

The Attorney General has waived all objection to the transcript because of the informal manner of setting out the demurrer to the indictment, and we are to take the record as fairly presenting the questions raised by the plaintiff in error upon his demurrer.

The indictment charges that the plaintiff in error did, on the 27th of June, 1877, *feloniously* marry and take to wife a certain woman named, his first wife being then living.

The objections taken to the indictment are: 1. That the offence charged is not a felony by the law of this State. 2. That the indictment fails to allege that the plaintiff in error knew, at the time of his second marriage, that his former wife was then living. 3. That the indictment fails to allege that the first wife was *not* beyond seas, or that she had *not* absented herself, for seven years together, and that the plaintiff in error *did* know that she was still living.

1. As to the first objection, we think it clear that it cannot be sustained.

Bigamy was not a felony at the common law; indeed, according to that law, it was not a crime of which the

ordinary common law tribunals took cognizance at all. It was originally considered as of ecclesiastical cognizance exclusively. But by the Stat. 4 Ed. 1, c. 5, known as the Stat. *De Bigamis*, the benefit of clergy was taken away from it; and during the existence of that statute, this ecclesiastical offence was frequently used as the subject of counterplea, in the common law Courts, to the claim of the benefit of clergy in the prosecution of clergyable offences. However, by Stat. 1 Ed. 6, c. 12, sec. 16, bigamy was declared to be no longer an impediment to receiving the benefit of clergy; and this was the state of the law upon this subject until the Stat. 1 Jac. 1, c. 11. By this statute it was enacted that if any person, being married, shall afterwards marry again, the former husband or wife being alive, "such offence shall be felony, and the person and persons so offending shall suffer death as in cases of felony." To this general enactment there are certain exceptions made by the statute, by way of provisos, and as these are abbreviated by *Blackstone*, (4 *Com.*, 164,) they are the following: "1. Where either party hath been continually abroad for seven years, whether the party in England hath notice of the other's being living or no. 2. Where either of the parties hath been absent from the other seven years within the kingdom, and the remaining party hath had no knowledge of the other's being alive within that time. 3. Where there is a divorce (or separation *a mensa et thoro*) by sentence in the ecclesiastical Court. 4. Where the first marriage is declared absolutely void by any such sentence, and the parties loosed *a vinculo.* Or 5. Where either of the parties was under the age of consent at the time of the first marriage, for in such case the first marriage was voidable by the disagreement of either party, which the second marriage very clearly amounts to."

If the crime of bigamy be not a felony by our law, then it is clear the present indictment is fatally defective; for

it is well settled in this State that it is not allowable to charge a misdemeanor to have been *feloniously* committed. *Black vs. The State*, 2 *Md.*, 376. And whether, by the law of this State, bigamy be a felony or not, depends upon the question whether the Stat. 1 Jac. 1, c. 11, be in force as part of our law. It is contended on the part of the plaintiff in error that it is not in force; that by the Crimes Act of 1809, c. 138, sec. 7, the Statute of James was abrogated, and hence Chancellor KILTY, in his report of the British statutes, made to the Legislature in 1810, classified that Statute among those found applicable but not proper to be incorporated with those reported to be in force. Was Chancellor KILTY correct in supposing as he did that this Statute of James had been abrogated by the Act of 1809, and therefore no longer in force?

There can be no question but that this statute had been in force prior to the Act of 1809. It had been expressly adopted, and each and every article, clause, matter and thing in said Act contained, had been declared to be in force here, by the Act of the provincial Legislature of 1706, c. 8. By the Declaration of Rights, adopted in 1776, it was declared that the people of this State were entitled to the benefit of such of the English Statutes as existed at the time of their first emigration, and which by experience had been found applicable to their local and other circumstances, and of such others as had been since made in England, and had been introduced, used and practised by the Courts of law or equity; and the same declaration has been substantially repeated in all subsequent Constitutions of the State. Seeing then that this statute had been expressly adopted by the provincial Legislature, as one applicable to the local and other circumstances of the people, and that it was continued in force after the Revolution and the province had become an independent State, it is still in force, unless repealed or modified by some positive legislation of the State.

Barber *vs.* State.

Now the only Act of this State which is supposed to have effected a repeal of the Statute of James, is the Act of 1809, c. 138, sec. 7, now found in the Code, Art. 30, sec. 11. But, it must be remembered, it was not a principal object of the Act of 1809 to prescribe offences and define the elements of crime. Its great object was, as declared upon its face, to establish a justly proportioned scale of punishments for existing crimes; and hence, in the first enacting clause, it was declared that the offences therein after mentioned against the government and the supremacy of the laws, should be punished in the manner following. Offences at the common law were to be defined as that law defined them, and offences created by previous statutes were left to their former statutory definition, except in some few instances, where modifications were made in the nature and elements of the crime, and some acts that were not crimes by any previous law were then made criminal for the first time. But in respect to the crime of bigamy or polygamy, while the Act mentions the several acts that constitute the crime, it neither declares the offence to be a misdemeanor nor a felony, and it uses no negative or restrictive terms in regard to any previous law. If it had been a felony at the common law, it would have remained a felony after this Act, and so, being a felony by a previous statute, which was in force at the time, it remained a felony; there being nothing in the Act of 1809 to negative the quality or grade of the crime as declared by Stat. 1 Jac. 1, c. 11. Besides, the clause in the Act of 1809 in relation to the crime of bigamy, and now in the Code, does not embrace all the exceptions contained in the Statute of James, relieving the parties from the consequences of a second marriage, during the life of the first wife or husband. The 3rd, 4th and 5th exceptions contained in the provisos, as stated by Blackstone, are not referred to in the Act of 1809; and these exceptions are of essential importance in determining the

guilt of the party in cases where the facts constituting the
exceptions could be shown to exist.   We are of opinion,
therefore, that the Stat. 1 Jac. 1, c. 11, is still in force in
this State, modified by the Act of 1809, as to the punish-
ment for the offence, but not as to the grade of the crime;
and that Chancellor Kilty was in error in supposing that
the Statute of James had been wholly abrogated by the
Act of 1809, c. 138.   The latter act not only modifies the
punishment prescribed by the Statute of James, but it
declares certain incidents and consequences of conviction,
not provided for in the British Statute.

2 and 3.  Then, as to the second and third objections
taken to the indictment, we think they are not well
founded.   It was not necessary to the sufficiency of the
indictment that it should have alleged, either that the
party indicted knew at the time of the second marriage
that his former wife was then living, or that she was not
beyond seas, or that she had *not* absented herself, for the
continuous period of seven years, before the second marri-
age.   Where there is an exception so incorporated with
the enacting clause of the statute, that the one cannot be
read without the other, there the exception must be nega-
tived in the indictment.   But that is not the case with
the statutes under consideration.   Here the enacting
clause of both statutes is perfectly complete, and the pro-
visos, making the exceptions, follow as distinct clauses of
the statutes.   In such case, it is not necessary to negative
the exceptions in the indictment, but the facts raising the
exception relied on must come from the defence.   *Steel vs.
Smith,* 1 *B. & Ald.,* 38; *Bode vs. The State,* 7 *Gill,* 326;
*Rawlings vs. The State,* 2 *Md.,* 201, 211.   Moreover, the
indictment used in this case appears to be in exact con-
formity to the approved precedents under the Stat. 1 Jac.
1, c. 11.  3 *Chit. Cr. L.,* 721; see, also, *Murray vs. The
Queen,* 7 *Adol. & El.,* 700.   If, upon the trial, it had been
proved by the accused that he and his first wife had lived

separate and apart for the period of seven years immediately preceding the second marriage, it would then have been incumbent on the prosecution to have shown that during that time he was aware of her existence; and, in the absence of such proof he would have been entitled to an acquittal.    But that is a principle to be applied to the proof, and not to the frame of the indictment.    *Reg. vs-Curgerwen, L. R.,* 1 *Cr. Cas. Res.,* 1.

It follows that the judgment on the demurrer must be affirmed.

*Judgment affirmed.*

(Decided 19th December, 1878.)