# CRIMINAL COURT OF BALTIMORE CITY.

Filed November 10, 1924.

## STATE OF MARYLAND
## VS.
## CHARLES HEFLINGER.

*Assistant State's Attorneys Eugene A. Edgett* and *Hilary W. Gans* for State of Maryland.

*W. Calvin Chesnut* and *S. Ralph Warnken* for traverser.

340

FRANK, J.—

The traverser was indicted by the Grand Jury of Baltimore City for bigamy. The basic facts as developed by the evidence taken at the trial before the court sitting without a jury were as follows:

The traverser was divorced from his first wife by decree of the Circuit Court of the City of Norfolk, Virginia, on June 22, 1920. The decree was absolute and unconditional in form and contained no restriction of any kind on the right of either party thereto to remarry, nor did it contain any reference to the Virginia statute presently to be quoted. On July 10, 1920, the traverser and Clelia L. Ramsay, both of whom were citizens and residents of Virginia, were married in due form of law in this city. Neither of them had any intention of changing his or her Virg'nian citizenship or residence, and shortly after their marriage in Baltimore, they returned to Virginia, where they lived together as husband and wife for a short while.

Subsequently, the traverser filed, in the Hustings Court, Part II, of the City of Richmond, a proceeding to have his marriage to Clelia L. Ramsay annulled on the ground that, inasmuch as the said marriage had taken place prior to the expiration of six months from the date of his divorce from his first wife, the second marriage was absolutely null and void and should be annulled because performed in violation of Section 5113 of the Virginia Code. This section was introduced in evidence at the trial of the instant case and reads as follows:

"Sec. 5113. *Dissolution of bond of matrimony; neither party to marry for six months.* On the dissolution of the bond of matrimony for any cause arising subsequent to the date of the marriage, neither party shall be permitted to marry again for six months from the date of such decree, and such bond of matrimony shall not be deemed to be dissolved as to any marriage subsequent to such decree, or in any prosecution on account thereof, until the expiration of such six months."

The Supreme Court of Appeals of Virginia affirmed the decree of the lower court annulling the Baltimore marriage in an opinion which is reported in 136 Va. 289. The marriage was held to be void, because having been entered into within six months after the decree of June 22, 1920, it was solemnized in violation of the express terms of Section 5113 above quoted; that that section had extraterritorial effect and applied to the ceremony performed in Maryland, especially as both of the parties thereto were citizens and residents of Virginia and returned thereto shortly after the ceremony and subsequently resided in that State.

No reasonable objection can be raised to the exercise by the State of Virginia of the right to determine for herself the question of the validity or invalidity of a marriage between two of her own citizens and residents wheresoever solemnized. The question involved in the present case is whether under the circumstances detailed the marriage of July 10, 1920, in this city, rendered the traverser guilty of the crime of bigamy under the laws of Maryland. In the view I have taken of this case it becomes unnecessary to consider the question which was so ably discussed by counsel as to whether the State of Maryland is or is not bound in her own Courts to give effect to the law of Virginia as expounded in the case of Heflinger vs. Heflinger, supra, and to the decree of the Court in that case. I shall assume that the law of Virginia above quoted is not a penal statute, that it is entitled to and should be accorded extraterritorial effect in the Courts of the State of Maryland and that if the question of the validity of the Baltimore marriage should be called into question in a Maryland civil court that marriage would be there held to be null and void.

Was the traverser in going through the Baltimore marriage ceremony guilty of the crime of bigamy under the laws of this State?

The statute relating to the crime of bigamy was enacted as the Act of 1809, Ch. 138, Sec. 7 (November Session), and is codified as Section 20 of Article 27 (3 Bagby's Annotated Code). For many years, this was regarded as constituting the entire statute law covering this crime, the Statute of 1 James I, Ch. II, although enforced in colonial times, was thought not to be a part of the law of Maryland, was not in-

cluded by Kilty in his report to the Legislature and will not be found in Alexander's British Statutes.

In the case of Barber vs. State, 50 Md. 161, the traverser had been charged in the indictment with *feloniously* marrying another woman, his first wife being then living. The indictment was demurred to on the ground that it charged a felony, although under the provisions of the Act of 1809, *supra*, the crime of bigamy was not made a felony and, therefore, was only a misdemeanor. If bigamy was not then a felony the objection to the indictment was a valid one and the demurrer would necessarily have been sustained.

Judge Alvey in delivering the unanimous opinion of the Court held (50 Md. 168) that the statute of 1 James I had been in force in this State after the Revolution and at the time that Maryland became an independent State and was then still in force unless repealed or modified by some positive legislation of the State and that the only Act of this State that is supposed to have effected such repeal is the Act of 1809, *supra*.

Judge Alvey then proceeds to use this language (page 169) the italics being furnished by me:

"But, it must be remembered, it was not a principal object of the Act of 1809 to prescribe offenses and define the elements of crime. Its great object was, as declared upon its face, to establish a justly proportioned scale of punishments for existing crimes; and, hence, in the first enacting clause, it was declared that the offenses thereinafter mentioned * * * should be punished in the manner following. Offenses at the common law were to be defined as that law defined them, and offenses created by previous statutes were left to their former statutory definition, except in some few instances, where modifications were made in the nature and elements of the crime, and some acts that were not crimes were then made criminal for the first time. But in respect to the crime of bigamy or polygamy, while the Act mentions the several acts that constitute the crime, it neither declares the offense to be a misdemeanor or a felony, *and it uses no negative or restrictive terms in regard to any previous law.* If it had been a felony at common law, it would have remained a felony after this act, and so, being a felony by a

previous statute, which was in force at the time, it remained a felony; there being nothing in the Act of 1809, to negative the quality or grade of the crime as declared by Stat. 1 Jac. I, ch. 11. *Besides, the clause in the Act of 1809 in relation to the crime of bigamy, and now in the Code, does not embrace all the exceptions contained in the Statute of James, relieving the parties from the consequence of a second marriage, during the life of the first wife or husband. The 3rd, 4th and 5th exceptions contained in the provisos, as stated by Blackstone are not referred to in the Act of 1809; and these exceptions are of essential importance in determining the guilt of the parties in cases where the facts constituting the exceptions could be shown to exist. We are of opinion, therefore, that the Statute of 1 Jac. I, ch. 11, is still in force in this State, modified by the Act of 1809, as to the punishment for the offense, but not as to the grade of the crime."*

On pages 170 of the opinion, Judge Alvey approves the form of the indictment in that case as "in exact conformity to the approved precedents under the Stat. 1 Jac. I, ch. 11."

The part of the opinion above quoted has never since been under consideration by the Court of Appeals, so far as I have been able to discover. The portion thereof relating to pleading has been repeatedly cited with approval.

It clearly holds that the Statute of James is in force in Maryland, including the 3rd, 4th and 5th provisos, which are declared to be *"of essential importance in determing the guilt of the party in cases where the facts constituting the exceptions could be shown to exist."*

Because of its adoption in Maryland, by Act of Congress of February 27th, 1801 (2 Stat. at Large, 103), the Statute of James became a part of the law of the District of Columbia. U. S. vs. Jennegen, 4 Cranch C. C. 118.

It was repealed by the Act of Congress of March 22, 1882 (R. S., Sec. 5352).

It apparently was not the law of any other State. Bishop on Statutory Crimes, Sec. 580.

The 3rd proviso above referred to reads as follows:

"III. Provided also, and be it enacted by the authority aforesaid, That

this Act, nor anything herein contained, shall not extend to any person or persons that are or shall be at the time of such marriage divorced by any sentence had or hereafter to be had in the Ecclesiastical Court; (2) or to any person or persons where the former marriage hath been or hereafter shall be by sentence in the Ecclesiastical Court declared to be void and of no effect: nor to any person or persons for or by reason of any former marriage had or made, or hereafter to be had or made, within age of consent."

Although the Statute of James as originally adopted is no longer in force in England, having been repealed and re-enacted by the Statute of 9 George 4, c. 31, this 3rd proviso comes before the Courts and was construed prior to its repeal. It was held that the divorce by sentence of the ecclesiastical court therein referred to meant a divorce or separation *a mensa et thoro*.

"As to the 3rd exception certainly the divorce intended is not *a vinculo matrimonii*, for then without the aid of any proviso either party may freely marry; but it must be intended of divorces *a mensa et thoro*." 1 Hale's Pleas of the Crown, p. 694; 1 Hawkin's Pleas of the Crown, p. 686, Sec. 5; 1 Russell: Crimes (8th Ed., 1923) 944; Bishop: Statutory Crimes, Sec. 583.

This interpretation of the 3rd proviso is expressly adopted in Barber vs. State, 50 Md., at page 167.

If, therefore, the traverser and his first wife had been divorced *a mensa et thoro*, under the Statute of James, the second marriage of the traverser in Baltimore would not have amounted to the crime of bigamy. In fact, however, the traverser and his first wife were declared by the decree of the Richmond Court to be divorced absolutely and without any qualification and restriction. Section 5113 of the Virginia Code imposed upon the parties the restriction that neither could marry again within six months from the date of the decree and for that period the bond of matrimony was deemed not to be dissolved as to any marriage subsequent to such decree, or in any prosecution on account thereof. The prosecution therein referred to could obviously mean only one had in a Virginia Court. The Virginia statute could, of course, not modify or affect

the criminal law of the State of Maryland.

The effect of the Virginia statute is to treat the parties as absolutely divorced as to all property and conjugal rights and bound only as respects their right to remarry within the six months' period. It is, therefore, a much broader and more comprehensive form of divorce than one *a mensa et thoro*, which merely ends the conjugal rights, does not permit either party to remarry during the lifetime of the other and leaves all the property rights unimpaired. If a remarriage after a divorce *a mensa does not constitute bigamy* under the Maryland law, *a fortiori* a remarriage during the period during which the parties are completely divorced except as to the right to remarry cannot amount to that crime.

It is contended, however, on behalf of the State, that the language of Barber vs. State, supra, is mere dictum; that the only question before the Court of Appeals was as to whether or not bigamy is a felony; that when it held the Statute of James in force in Maryland, it was necessary so to hold only as to that portion of the statute which made bigamy a felony and that so much of the opinion as declared the 3rd, 4th and 5th provisos of the statute to be in force in this State was gratuitous and *obiter* and not binding on this Court.

Assuming for the moment that the language in question was only dictum, it is nevertheless entitled to profound respect on account of the learning, accuracy and care of the distinguished judge from whom it proceeded. Judge Alvey's position in the judiciary of this State entitles any statement of the law made by him to great weight. A dictum of an appellate tribunal should be treated by an inferior Court with respectful consideration, not only, says an eminent authority, "because it proceeds from an appellate court, but also as furnishing a suggestion of the decision which the Court might be expected to make if the point should come fairly before it for determination. Yet dicta are not entitled to the same absolute and imperative force as the rulings on points actually decided. On the other hand, it is a serious error and dangerous practice for the inferior courts to distinguish them out of the way of their own views, by treating them as mere *dicta* on a subtle analysis

of the points involved and classification of them as necessary or unnecessary to the decision in the case.

"But dicta, though not precedents, may possess considerable value as persuasive arguments. This occurs chiefly where there are no direct adjudications upon the precise point, as where the decisions are in direct conflict." Black: Law of Judicial Precedents, pp. 176, 179.

Maryland, as we have seen, is probably the only jurisdiction in which the Statute of James is now in force. Barber vs. State, supra, is the only decision of our appellate court construing that statute. The value even of the dicta in that decision becomes apparent in the light of the quotation from Black, especially when those dicta emanated from so distinguished a jurist as the late Judge Alvey.

I am, however, by no means convinced that the statement in Barber vs. State, with respect to the effect to be given to the 3rd and other provisos in the Statute of James is *obiter dictum*. The question before the Court was twofold: 1st, is the Statute of James in force in this State; and 2nd, to what extent is it modified by the Act of 1809, ch. 138, Sec. 7. Both of these questions had to be answered before the Court could determine whether or not bigamy was a felony in Maryland subsequent to the enactment of the Act of 1809. The answer could only be given after an examination of all the provisions of both of these statutes. The consideration of their scope and effect, therefore, lay directly in the path which the Court had to traverse in reaching its conclusion.

In Alexander vs. Balto., 53 Md. 100, the question under consideration was whether a provision of a local law of Allegany County applicable to assessment for purposes of taxation was by implication repealed by a subsequent general law providing for a general assessment of all property in the State. The Court held that such a repeal had been intended. The opinion construed the section of the local law so held to have been repealed as follows: "The effect of this provision is to make the corporation liable to pay all the taxes which the stock in the hands of the individual owners would be charged with: so that the State would get all its taxes at once, and Allegany County would get all the taxes which would otherwise be distributed among the various counties or cities where the stockholders lived."

In Baltimore City vs. Allegany Co., 99 Md. 1, 6, it was contended by appellant that this statement was *"obiter dicta*, because, it is said, the only question before the Court was whether Sec. 160 of Art. 1 of the Local Code had been repealed by the Act of 1866, ch. 157, providing for the general valuation and assessment of property in the State, as the Court decided it was; while the appellees contend that in order to determine whether there was such repeal, it was first necessary to determine the construction of the local law in order to ascertain whether there was such conflict as to work a repeal. We agree with the view of the appellees upon this point * * *."

In the case at bar, the State contends that the effect of the Act of 1809 is to repeal at least so much of the Statute of James as is embraced in the 3rd proviso. There can be no contention that there is any express repeal in the language of the Act of 1809 (Barber vs. State, 50 Md., at p. 169). If such a repeal is to be found, it must be by implication growing out of the repugnancy of the provisions of the latter with those of the earlier statutes. Such repugnancy can be determined only after a comparison of all of the provisions of both statutes.

For these reasons, I hold, on the authority of Barber vs. State, supra, that the 3rd proviso of the Statute of James is in force in this State. It follows, therefore, that the remarriage in this State of the traverser after he had been divorced on the terms shown by the evidence in this case does not constitute bigamy under the laws of Maryland.

The Act of 1809, ch. 138, Sec. 7 (Art. 27, Sec. 20) prescribes that, in the event of the conviction of a man for bigamy, his first wife on his conviction shall forthwith succeed to dower in his real estate and be entitled to one-third of his personal estate and shall in addition forfeit his claim to any part of her estate. By the express language of this statute, this part of the penalty upon conviction is made imperative.

The Virginia divorce secured by Heflinger from his first wife, whatever its effect as to the right of the parties to remarry, completely terminated all of their respective rights in each other's

property, real and personal. It would seem reasonable to conclude that persons so divorced, were not intended by the statutes to come within its language, "Whosoever being married shall, the first husband or wife (as the case may be) being alive, marry any person, shall undergo a confinement," etc. The penalty provided by the statute is obviously inapplicable to a person so divorced, and this circumstance affords an additional reason for holding that a person so divorced does not by his re-marriage commit bigamy under the statute.

I shall, therefore, find the traverser not guilty.