JOHN T. HILER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield June 13, 1895.*

1. RECORD—*affidavit in support of motion to quash indictment, no part of.* An affidavit filed in support of a motion to quash an indictment on the ground that it was found by the grand jury without competent evidence, though copied by the clerk into the record, is no part of the record, unless made so by bill of exceptions.

2. INDICTMENT—*for bigamy—sufficiency of averment that former wife is living.* An indictment for bigamy sufficiently avers that the first wife is still living where it refers to her as "being then living," and to defendant as "well knowing" that she was living, and as "never having been legally divorced" from her.

3. BIGAMY—*evidence required to establish common law marriage in prosecution for.* Cohabitation, repute and declarations of the parties, though raising a presumption of marriage for many purposes, are insufficient, alone, to establish a common law marriage, for the purpose of sustaining a conviction for bigamy by reason of a subsequent marriage.

4. EVIDENCE—*presumption of marriage arising from cohabitation—how rebutted.* The presumption of marriage arising from cohabitation, repute and declarations, is rebutted by a similar presumption arising from similar relations subsequently sustained to another person.

5. SAME—*proof of common law marriage to convict of bigamy.* Where the former of two marriages relied on to convict of bigamy is a common law marriage, a contract *per verba de presenti*, with cohabitation, and all elements necessary to constitute such common law marriage, must be proved in order to sustain the conviction.

6. WITNESSES—*competency of first wife to testify.* In a prosecution for bigamy the woman alleged to be the former living wife is incompetent as a witness against the defendant.

7. TRIAL—*when subsequent exclusion of improper testimony does not cure error.* The error in permitting such former wife to testify to such former marriage, which was a point in controversy, is not cured by subsequently excluding her testimony.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

R. L. FLEMING, for plaintiff in error :

The indictment must aver that the first spouse was alive at the time of the second marriage, and this averment must be in positive language. 2 Wharton on Crim. Law, (9th ed.) sec. 1706 ; *Prichard* v. *People,* 149 Ill. 52.

The wife of a defendant is an incompetent witness. *Miner* v. *People,* 58 Ill. 60; Moore on Crim. Law, sec. 76, p. 63 ; 2 Wharton on Crim. Law, (9th ed.) sec. 1709.

If she claims to be the wife she is incompetent. 2 Wharton on Crim. Law, (9th ed.) sec. 1709.

In prosecutions for bigamy a marriage in fact must be proved. *Miner* v. *People,* 58 Ill. 60; *Harman* v. *Harman,* 16 id. 88 ; *Kipler* v. *Elser,* 23 Ill. App. 643 ; *Miller* v. *White,* 80 Ill. 585; *Cartwright* v. *McGown,* 121 id. 406; 2 Wharton on Crim. Law, (9th ed.) sec. 1696; 1 Greenleaf on Evidence, (9th ed.) sec. 49 ; *People* v. *Humphrey,* 7 Johns. 598 ; *Case* v. *Case,* 17 Cal. 598 ; *Lambert* v. *People,* 5 Mich. 349 ; *State* v. *Roswell,* 6 Conn. 448 ; *Commonwealth* v. *Littlejohn,* 15 Mass. 162.

Where the relation is proven and admitted to be illicit in its origin, that relation is presumed to continue, and the prosecution must then prove a change of that relation to a relation of marriage in fact. Simple proof, then, of reputation and cohabitation is insufficient. *Cartwright* v. *McGown,* 121 Ill. 388, and cases cited ; *Williams* v. *Williams,* 46 Wis. 464; *Port* v. *Port,* 70 Ill. 484; *Hebblethwaite* v. *Hepworth,* 98 id. 128 ; *Fisher* v. *Hawley,* 8 Hun, 65 ; *Peck* v. *Peck,* 12 R. I. 485.

·Confessions, admissions, cohabitation, reputation, etc., are not sufficient to prove a marriage in a case of bigamy. Stephens' Digest of Law of Evidence, p. 111, art. 53; *Case* v. *Case,* 17 Cal. 598 ; *Hays* v. *People,* 25 N. Y. 390 ; *Commonwealth* v. *Littlejohn,* 15 Mass. 163 ; *State* v. *Roswell,* 6 Conn. 446 ; *State* v. *Hodgekins,* 19 Me. 155 ; *Hutchins* v. *Kimmel,* 31 Mich. 126 ; *Dann* v. *Kingdom,* 1 T. & C. 492 ; *Wedgewood's case,* 8 Me. 75 ; *Commonwealth* v. *Norcross,* 9 Mass. 492.

Marriage alleged in another State must be proved as alleged. *Port* v. *Port,* 70 Ill. 484; *People* v. *Lambert,* 5 Mich. 349 ; 14 Am. & Eng. Ency. of Law, 531, note 3, and cases cited.

MAURICE T. MOLONEY, Attorney General, T. J. SCOFIELD and M. L. NEWELL, of counsel, and JOHN A. STERLING, State's Attorney, for the People :

The first wife of the defendant was called by the People as a witness. The court permitted her to testify, but afterward withdrew the evidence from the jury, instructing them not to consider it. Even though her testimony was incompetent, this cured all error. *Railroad Co.* v. *Fietsam,* 123 Ill. 518 ; *Simons* v. *People,* 150 id. 66.

A marriage may be proven in a prosecution for bigamy, as in other cases. Starr & Curtis, sec. 51 of Crim. Code.

Marriage may be proven by reputation, declarations and conduct of the parties, and by other circumstances usually accompanying that relation. *Tucker* v. *People,* 122 Ill. 583 ; 2 Greenleaf on Evidence, sec. 462 ; 3 id. sec. 204; *State* v. *Cooper,* 103 Mo. 266 ; *State* v. *Hughes,* 35 Kan. 626 ; *Hayes* v. *People,* 25 N. Y. 390 ; 2 Wharton on Crim. Law, sec. 1700.

As to what constitutes a common law marriage we respectfully refer the court to the following cases : *State* v. *Hughes,* 35 Kan. 626 ; *Cartwright* v. *McGown,* 121 Ill. 406; *Hayes* v. *People,* 25 N. Y. 390; *Hebblethwaite* v. *Hepworth,* 98 Ill. 126.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

At the April term, 1894, of the circuit court of McLean county the grand jury returned into court an indictment against John T. Hiler for bigamy. The indictment was endorsed a true bill, the endorsement being signed by the foreman. The names of five witnesses were endorsed on the back of the indictment. On motion, the first, second and third counts were quashed, and on May 25 a trial was had on the remaining counts, and a verdict of guilty under the fifth and sixth counts was found by the jury, and the punishment of the defendant fixed at imprisonment in the penitentiary for the term of one year. A motion for new trial, as also in arrest of judgment, was overruled by the court and a judgment on the verdict entered, and the defendant sued out this writ of error.

One of the causes assigned for quashing the indictment was, that no evidence was introduced before the grand jury upon which the indictment could have been based. One of the errors assigned presents for our consideration that question.

The following affidavit was copied into the record by the clerk, and is claimed to have been filed with the motion to quash:

"John T. Hiler, being first duly sworn, on his oath deposes and says that he is the defendant in the above entitled cause; that he is informed and believes that said indictment herein was procured from the grand jury herein upon illegal evidence and without certain material and necessary evidence. Affiant says that he is informed and believes that the grand jury which indicted him had before them no competent evidence of a former marriage between this defendant and the alleged Lizzie Hiler, or between this defendant and any other woman known or not known to said grand jurors, nor had they any evidence before them as whether or not said parties were living at time of marriage to Grace Washburn, or as to whether

or not said former marriages, or either of them, were or were not legally dissolved ; that neither the said Lizzie Hiler nor the said Adelia Karr were present and testified before said grand jury; that the only other witnesses are William Kane, Grace Washburn and Robert Maxton, all of Bloomington, Illinois. Affiant says that these parties named are known to the State's attorney, and were so known at and for a long time prior to the commencing of said grand jury, and that their places of residence are known and were then known to him, and that the facts herein are known to said witnesses Lizzie Hiler and Adelia Karr, and this fact was known to the State's attorney.

JOHN T. HILER."

The motion to quash was incorporated into the bill of exceptions, and thus became a part of the record ; but this affidavit was not incorporated into the bill of exceptions, and hence is no part of the record. There was therefore nothing before the court showing, or tending to show, the nature or character of the evidence introduced before the grand jury, so far as appears from the record.

It is also claimed that the court erred in overruling the motion to quash the sixth count of the indictment because it fails to aver, in direct and positive terms, that the first wife was still alive, as was held to be necessary in *Prichard* v. *People,* 149 Ill. 50. There the averment of the indictment, "the defendant well knowing the said Eliza Ann Ferguson, his former wife, was then alive," was held to be insufficient. Here, however, the indictment is different. After averring that the defendant did unlawfully and feloniously marry Grace Washburn, the indictment proceeds: "The said Lizzie Myers, said former wife, *being then alive,* and the said John T. Hiler *well knowing* that said Lizzie Myers, his former wife, was then alive, and the said John T. Hiler *never having been* legally

divorced from the said Lizzie Myers." We regard this averment as sufficient.

It is next contended that no prior marriage was established by the evidence. Section 28, chapter 38, of the Criminal Code, (Hurd's Stat. p. 470,) provides : "Whoever, having a former husband or wife living, marries another person, or continues to cohabit with such second husband or wife in this State, shall be deemed guilty of bigamy." Section 29 provides : "It shall not be necessary to prove either of the marriages by the register or certificate thereof, or other record evidence, but the same may be proved by such evidence as is admissible to prove a marriage in other cases." As has been seen, the charge in the indictment, in substance, was, that John T. Hiler, on the 20th day of September, 1893, did marry one Lizzie Myers, and her, the said Lizzie Myers, then and there had for his wife, and the said John T. Hiler afterward, to-wit, on the 21st day of February, 1894, in the county of McLean and State of Illinois, feloniously and unlawfully did marry one Grace Washburn, and to her, said Grace Washburn, was then and there married, the said Lizzie Myers, his former wife, being then alive, etc.

It appears from the evidence that the defendant was a resident of Grand Haven, Michigan. He composed music, played on the piano and was a good singer. He attended county fairs, where he sold music. He seems to have been married at one time to Mrs. Jennie Graham, and obtained a divorce from her April 14, 1893. On Sunday, September 10, 1893, the defendant was at Appleton, Wis., stopping at the Sherman House. After dinner he went into the parlor and met Lizzie Myers and Miss Stillman. He sang and played on the piano, and then suggested a walk. Another young man joined the party, and the four went to the park. The defendant and Lizzie Myers walked together. They remained at the park during the afternoon, and returned to the hotel in the evening, for supper. The defendant testified that on Sunday

afternoon he and Miss Myers talked matters over.    He talked about marrying her.    On cross-examination, in reply to questions asked, he said:

Q. "Did you ask her that afternoon?

A. "I asked her if she would keep company with me.

Q. "What did she say?

A. "She said she was going with a gentleman by the name of Bissle.

Q. "Did you say then you would marry her?

A. "It was pointing in that way.

Q. "Did you say that?

A. "Yes, sir.

Q. "She said all right?

A. "Yes, sir.

Q. "That was on Sunday afternoon?

A. "Yes, sir."

It also appears, from the evidence of the defendant, that on Sunday afternoon he arranged with Miss Myers to go with him the next day to Hortonville.    On cross-examination he further testified:    "The next day I went to Stillman's and took her to Hortonville.    She introduced me as her husband.    As we went to Hortonville we talked over matters.    After we arrived at Hortonville we talked about her introducing me as her husband. I didn't object, but said that would be all right.    She is as much to blame as I am, and she did introduce me as her husband, and I agreed to it.    We occupied the same bed that night.    We went back to Appleton and staid there two nights.    At Stillman's she introduced me as her husband and I said we were married.    We went from there to Oshkosh.    I telegraphed for her to come down there and help me on the 18th.    She came the 19th.    I was there until the 22d.    She left on the morning of the 22d. I went to Sheboygan.    I was three days at the fair and she helped me.    I went to Milwaukee, was there two weeks, and from there we went to Chicago.    I introduced

her as my wife from place to place, and we occupied the same bed. We went from there to Mrs. Carle's, at Chicago, and I introduced her as my wife, and I introduced her to visitors who came in to see her, and we occupied the same room and the same bed. When I was at Mrs. Carle's I slept with Lizzie always when I was there, every night. We rented furnished rooms and Lizzie kept charge of it and cooked my meals all the time. After we had been there a while I went on the road, and then I wrote the letters that have been read, and then got replies, and that continued up to February 23. The last letter I wrote was from Bloomington, on the morning of the 23d of February,—three hours before I met Miss Washburn."

Mrs. Carle testified that they came to her house in Chicago in September, 1893. He introduced her as his wife. They stopped there and did their own cooking. The witness further testified: "He would be away a week or two at a time. He was selling music. I think the last time he was gone over a month. He went to different towns in Illinois. They kept up a correspondence while he was gone. I saw the letters that he wrote to her. I know his handwriting. He always introduced her as his wife, Mrs. Hiler. That occurred whenever they met other people coming in to see me. I never knew of him introducing her in any other way. They slept in the same bed, of course. She told me they were married in Oshkosh, just the same as she has stated here. Of course I thought they were married. Everybody thought so. I never saw any marriage certificate. I asked him what he had done with his marriage certificate, and he said he had sent it to his mother."

A large number of letters written by the defendant to Lizzie Myers after they had assumed the relation of husband and wife before the public, were read in evidence, in which the defendant frequently addressed her as "Mrs. Lizzie Hiler," "Mrs. John T. Hiler," or "my dear wife."

These were the leading facts proven on the trial tending to prove a common law marriage between defendant and Lizzie Myers. Evidence was then introduced showing that on February 23, 1894, the defendant met Grace Washburn, a young lady of Bloomington, at a grocery store in that place, and was introduced to her. That evening he called at her house and proposed marriage. She replied that she was not ready. The next afternoon they met again at the grocery store. He walked down town with her and again proposed marriage. She told him to wait a while. But he did not wait. That afternoon, between five and six o'clock, they were married. Does the evidence establish a common law marriage between the defendant and Lizzie Myers?

To constitute the offense charged in this indictment it was incumbent on the prosecution to show, against the defendant, two successive marriages,—one legal and innocent, the other penal. Both must be actual. The first marriage must be valid and binding, and a marriage in fact. Marriage with capacity and consent, proved by direct testimony, as by the evidence of witnesses who saw and heard the marriage celebration performed between the parties, or record evidence, with identification, would be evidence of actual marriage in fact. Under the decisions of this court a marriage legal at common law is recognized as valid and binding in this State. What constitutes such common law marriages legal and valid has been recognized by repeated adjudications. To constitute a marriage legal, at common law, the contract and consent must be *per verba de presenti*, or if made *per verba de futuro cum copula*, the *copula* is presumed to have been allowed on the faith of the marriage promise, and that so the parties, at the time of the *copula*, accepted of each other as man and wife. *Port* v. *Port*, 70 Ill. 484; *Hebblethwaite* v. *Hepworth*, 98 id. 126; *Cartwright* v. *McGown*, 121 id. 388.

Under the evidence in this record it is not shown that any marriage ceremony was performed. No actual marriage, in fact, is proven between defendant and Lizzie Myers. The evidence discloses the fact that the defendant and one Lizzie Myers lived together as husband and wife, so spoke of and introduced themselves to others, and in letters the defendant addressed her as his wife. They were, by repute, husband and wife during this cohabitation. On many questions cohabitation and repute are adequate evidence from which marriage is presumed. For the determination of many cases, declarations, whether verbal or in writing, with evidence of cohabitation and repute, are adequate evidence of marriage. The manner in which persons living together as husband and wife are received among their friends and neighbors, their reputation and declarations, most commonly spring from the fact of cohabitation. As expressed by Bishop in his work on Marriage, Divorce and Separation, (vol. 1, sec. 939,) they "are shadows attending on cohabitation, and they should be simultaneous therewith." On the trial of any issue involving the question of marriage, all these shadows of and resulting from cohabitation may be introduced in evidence. From the fact of cohabitation, with the attendant shadows, for many purposes there follows the presumption of marriage. This presumption increases with the lapse of time the parties are cohabiting as husband and wife. In this record there is no actual marriage in fact proven, and no proof of a contract *per verba de presenti*, nor is there evidence *per verba de futuro cum copula*. In the absence of such evidence there remains only evidence of cohabitation, with its attendant shadows, from which springs a presumption of marriage. The marriage to Grace Washburn as an actual marriage in fact is shown. Cohabitation and its attendant shadows are shown. Two cohabitations are proven by the evidence, from the first of which a marriage of the defendant to Lizzie Myers would be presumed, and from the second

of which the marriage of the defendant to Grace Washburn would be presumed, and in the absence of proof of a contract *per verba de presenti* each presumption is similar, the first establishing a marriage and the second disproving the presumption of such first marriage.   Where a marriage, legal at common law, is sought to be shown on which to base a conviction for bigamy, all the elements necessary to constitute such common law marriage must be proven.   There must be evidence of a contract *per verba de presenti*, with proof of cohabitation.   In prosecutions for bigamy strict proof of the fact of marriage is required.   (*Harman* v. *Harman*, 16 Ill. 85.)   Where proof of marriage legal at common law is sought to be shown it must be absolute proof of marriage.   *Hayes* v. *People*, 25 N. Y. 390.

In the discussion of this evidence we have wholly omitted from consideration the testimony of Lizzie Myers, which was admitted, and after the defendant closed his case and the evidence in rebuttal was introduced, her evidence was then excluded.   The wife was not a competent witness against the defendant.   (*Miner* v. *People*, 58 Ill. 59.)   The effect of her evidence was prejudicial to such an extent that the defendant did not have a fair trial.

It is unnecessary to discuss the questions raised on the instructions, as they are materially erroneous as given for the State, on account of entirely disregarding the distinction between a presumption arising from facts proven, and presumptions arising from other facts shown by the evidence.

The judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*