## STATE v. CLINTON I. SHERWOOD.

### May Term, 1896.

*Bigamy.   Marriage how proved.   Circumstantial evidence.   Counts held good.*

1.  If A. marries B., she having another husband then living, and subsequently marries C., the marriage with C. is not bigamous, for A. never was the husband of B.

2.  If a marriage in fact is proved, another marriage set up to defeat it must also be proved in fact, and the presumption arising from cohabitation and repute will not be sufficient.

3.  A marriage in fact may be proved by circumstantial evidence.

4.  That two persons, reputed to be unmarried, go away and soon after return, saying that they have been married, and thenceforth cohabit ; that they introduce each other as husband and wife; that they are received as husband and wife in the community, are all circumstances tending to establish a marriage in fact.

5.  V. S., s. 5060, providing that in trials for bigamy marriage may be proved by acts of cohabitation, etc., applies to the marriage of the respondent, and not to the other marriages which may incidentally be drawn in question.

6.  What the first wife said to respondent previous to his second marriage, as to her own former marriage, although relied upon by him, is inadmissible.

7.  *Held*, that both counts in the information were good, the first as following the statutory form, and the second as alleging that the respondent had two women as and for wives at the same time.

Information of bigamy.   Plea, not guilty.   Trial by jury at the March term, 1896, Rutland county, Taft, J., presid-

ing.   Verdict of guilty and judgment on verdict.   The respondent excepts.

The evidence of the state tended to show that the respondent was married to one Nellie E. Barry on August 25, 1891, at Montpelier, Vt., and that he continued to reside with her as his wife in the town of Newport, N. H., until about January, 1896; that April 8, 1896, he was married to one Matie E. Barney, at Rutland, Vt.   The respondent claimed that Nellie E. Barry was a married woman at the time of his marriage to her and that therefore, said marriage was void.   As tending to support this he offered the evidence set forth in the opinion of the court in reference to her marriage with one Charles Palmer.

The respondent also offered to show that in January, 1896, shortly before his marriage with the Barney woman in April, the said Nellie E. Barry had told him that she was the wife of the said Charles Palmer at the time of her first marriage with the respondent in 1891, but that since then she had procured a divorce from said Palmer and that she was willing to re-marry him, the respondent, and that the respondent relied upon this in contracting his last marriage with Mrs. Barney.   This testimony was excluded.

The respondent moved in arrest of judgment for that the information was bad.   It contained two counts which were in substance as follows :

I. "That Clinton L. Sherwood, of the city of Rutland, in said county, at the city of Rutland aforesaid, on the 8th day of April A. D. 1896, did marry and have for his wife one Matie E. Barney, and at the time of said marriage of the said Clinton L. Sherwood to the said Matie E. Barney, he, the said Clinton L. Sherwood, had a lawful wife then living."

II. "That Clinton L. Sherwood of the city of Rutland, in the county of Rutland, on the 25th day of August, A. D. 1891, at Montpelier, in the county of Washington, did marry and have for his wife one Nellie E. Barry and afterwards,

while the said Nellie E. Barry was living, did on the 8th day of April A. D. 1896, at the city of Rutland, in said county, marry and have for his wife one Matie E. Barney, and afterwards, on the 18th day of April A. D. 1896, at the city of Rutland aforesaid, did unlawfully and feloniously have both the said Nellie E. Barry and the said Matie B. Barney for his two wives at one and the same time."

*Butler & Moloney* for the respondent.

The statute makes cohabitation and similar acts admissible in cases of this sort to prove marriage.   *State* v. *Abby*, 29 Vt. 60 ; V. S., s. 5060.

Marriage may be proved by circumstantial evidence like any other fact.   *Regina* v. *Simmonsto*, 1 Car. & P. 164 ; 1 Russ., Crimes, Graves Ed. 218 ; Duchess of Kingston's case, 20 How. St. Tr. 355 ; Truman's Case, 1 East P. C. 470 ; *State* v. *Libby*, 44 Me. 469 ; *Walverton* v. *State*, 16 Ohio 173 ; *Quin* v. *State*, 46 Ind. 352 ; *Commonwealth* v. *Jackson*, 4 Bush 679 ; 2 Phillips, Ev. 210 ; 2 Greenl. Ev. s. 49 ; Chitty, Crim. Law 472 ; *Miles* v. *U. S.*, 193 U. S., 304 ; *Betsinger* v. *Chapman*, 88 N. Y. 497 ; *Chamberlin* v. *Chamberlin*, 71 N. Y. 423 ; *Green* v. *State*, 59 Ala. 68.

The respondent might show that he relied in good faith upon the representations of the Barry woman.   14 Am. and Eng. Encyc. of Law, 502 ; *Reg.* v. *Brown*, 1 Car. & P. 144 ; *State* v. *Goodenow*, 65 Me. 30.

*J. C. Jones*, State's Attorney, for the state.

Vermont does not recognize a common law marriage, therefore evidence of cohabitation between Palmer and the Barry woman was properly excluded.   *Morrill* v. *Palmer*, 68 Vt. 1.

ROWELL, J.   This is an information for bigamy.   A marriage in fact was proved between the prisoner and the

woman Barry on August 26, 1891, and a later marriage in fact between the prisoner and the woman Barney.

The prisoner offered, but was not permitted, to show that about 1880, the woman Barry lived some two years at Springfield, Vt., and during all that time cohabited as his wife with one Palmer, who was still alive; that they were reputed to be husband and wife, and introduced each other as such, during all that time; that she kept house for him, and acted, and held herself out, as his wife, and claimed to be such, and that he so claimed; that since 1891 she declared that she had procured a divorce from Palmer, which was not true; that for about eight years after they lived at Springfield, they resided at Newport, N. H., and there lived and cohabited as husband and wife, occupied the same room, held themseves out as husband and wife, and were reputed to be such, and as such were known and received in that community, and that during nearly all that time her mother and son lived with them; that prior to their going to Springfield as aforesaid, they lived at said Newport and were reputed to be unmarried; that they went away, returned in a short time and said they were married, and thereafter lived together as husband and wife till they went to Springfield.

If at the time she married the prisoner she was the wife of another, the marriage was void by statute, and the prisoner's subsequent marriage was not bigamous. Thus:

"A takes B to husband in Holland, and then in Holland takes C to husband, living B, and then B dies, and living C she marries D, this is not marrying a second husband, the former being alive, for the marriage to C, living B, was simply void, and so he was not her husband; but if B had been living, this had been felony to marry D in England."

Lady Madison's case, 1 Hale's P. C. 693, ruled about 1648. This has been the law ever since. *Halbrook* v. *State*, 34 Ark. 511, 36 Am. Rep. 17.

When a marriage in fact, or a fact of marriage, is proved,

the mere legal presumption of marriage arising from cohabitation and repute is not sufficient to establish a marriage set up to defeat it, but the marriage thus set up must also be proved as a fact, like the other.    *Poultney* v. *Fairhaven,* Brayt. 185 ; *Waddington* v. *Waddington,* 20 Mo. App. 609 ; *Jenkins* v. *Jenkins,* 83 Ga. 283, 20 Am. St. Rep. 316 ; Note, 57 Am. Rep. 454 ; 1 Bishop, Mar. Div. & Sep. s. 1034.   This is because there are conflicting presumptions of innocence, the presumption of marriage arising from cohabitation and repute, drawn by the law in favor of innocence, being antagonized by the presumption of freedom from the guilt of bigamy.   1 Bishop, Mar. Div. & Sep. s. 1026 and following ; *Jones* v. *Jones,* 48 Md. 391, 30 Am. Rep. 466.

Though every marriage is, in a general sense, a marriage in fact, or a fact of marriage, yet that expression as used in the books has acquired a technical meaning in the law, and signifies the fact proved by direct testimony, by the marriage register, or by any other evidence the effect of which is not derived from the presumed innocence of a cohabitation reputed matrimonial.   1 Bishop, Mar. Div. & Sep. s. 1032. There is a distinction between presuming a marriage from cohabitation and repute and proving a marriage by circumstantial evidence.   Bishop makes this clear in the chapter from which the last citation is taken.   See, also, *Jenkins* v. *Jenkins,* above cited.   Keeping this distinction in mind, a marriage in fact is always provable by circumstantial evidence as well as by direct evidence ; for direct evidence is not primary and circumstantial evidence secondary, but both are of the same degree, though one may, in a given case, be more satisfactory than the other.   1 Bishop, Mar. Div. & Sep. ss. 1032, 1064.   But no formula of the circumstantial evidence revelant to this issue is possible.   Whatever is admissible on general principles and satisfies the trier of the fact to the requisite degree of certainty, is sufficient, Ib. s. 1045, and proves a marriage in fact, or a fact of marriage,

Ib. s. 1064, valid and formal under the law.  Stephen's Dig.
Ev. Art. 53.  And  herein  there  is  no  distinction  between
civil and criminal cases, for as to the kinds of proof they are
alike, differing only in the measure required.

The question is, therefore, whether the  testimony offered
by the prisoner was competent to go to the jury on the ques-
tion  of  a  marriage  in  fact between the  woman Barry and
Palmer.    If it contained nothing but cohabitation and re-
pute it was not competent, because not sufficient of itself, in
the circumstances of this case, to establish such a marriage.
But although in such cases there is withdrawn from cohabi-
tation and repute their consequence as affording a basis of a
presumption of law, they are, nevertheless, relevant to the
issue of a marriage in fact, and are receivable among the
proofs of such a marriage, for they explain and  give char-
acter to the more effective testimony.    1  Bishop, ss.  1025,
1059;  *Jenkins* v.  *Jenkins*  and  *Holbrook*  v.  *State*, above
cited.    Thus, in *Mitchell* v. *Mitchell*, 11 Vt. 134, a divorce
case, in which it was probably regarded necessary to  prove
a marriage in fact, the court admitted reputation, accom-
panied with proof of the death of the  celebrating magistrate
and that no record of the marriage could be found.

The offer to  show  that  before  the  woman  and  Palmer
went to Springfield to live they lived in Newport and were re-
puted to be unmarried, and  went away  and  returned  in a
short time and said they were married, and  thereafter lived
together as husband and wife till they  went  to  Springfield,
was an offer of testimony that tended to  show marriage ;
and as it did not derive its probative force from the presumed
innocence of a cohabitation reputed matrimonial, it tended
to show a marriage in fact.   The same is true of the offer to
show that they introduced each other as husband  and  wife,
and  claimed  to  be  such, and  held themselves out  to  the
world as such, for their declarations and conduct in  this re-
spect were a part of the *res gestae* of cohabitation, and there-

fore admissible.   I Bishop ss. 937, 1155; *In re Taylor*, 9 Paige, 611, 617.   That they were treated and received as husband and wife among their friends and neighbors is another proof derived from the doctrine of the *res gestae*.   I Bishop s. 938; I Greenl. Ev. s. 107.

Thus it appears that the testimony offered by the prisoner was legally competent to go to the jury on the question of a marriage in fact between the woman Barry and Palmer.   It ought, therefore, to have been received for what it was worth, and submitted with proper instructions.

We do not regard V. S. 5060 as affecting this question particularly, as it relates only to proving the fact of the marriage of a respondent.   It is based upon the general principle that the inculpatory acts and declarations of a respondent are evidence against him.

That the woman told before and at the time of their marriage that she was divorced, which he believed to be true, was no defence, and properly excluded.

The motion in arrest was properly overruled.   The first count is justified by V. S. 5061.   The second count conforms to the precedent suggested by Bishop in his Directions and Forms, s. 832.   It is said that it is legally impossible for a man to have two wives at one and the same time, and so it is; but he can as matter of fact have two women as and for wives at one and the same time, and this is what the count alleges the prisoner did.

*Judgment reversed, verdict set aside, and cause remanded for a new trial.*