# WRIGHT *v.* STATE

[No. 150, October Term, 1950.]

164

*Decided June 15, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Hal C. B. Clagett* and *Jerrold V. Powers,* with whom were *Sasscer, Clagett & Powers* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Carlyle J. Lancaster, State's Attorney for Prince George's County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Gerald B. Wright, age 36, a circulation man for a Washington newspaper, was tried before a jury in the Circuit Court for Prince George's County on an indictment for bigamy. The indictment charged that on October 3, 1948, Wright, "being married to one Imogene Wright, the said marriage not having been dissolved by annulment or divorce *a vinculo matrimonii,* the said Imogene Wright being then alive, with force and arms did feloniously marry and take as his wife one Jean Dunn." A certificate of the Clerk of the Circuit Court for Cecil County showed that defendant married Imogene Bissell, of Washington, at Elkton on June 27, 1947; and a certificate of the Clerk of the Circuit Court for Prince George's County showed that defendant married Jean Dunn, of University Park, at Hyattsville on October 3, 1948.

Defendant made the defense that he had married a divorced woman named Dell Thompson in Florida, in August, 1941; that the Florida marriage had not been dissolved prior to the time when he married in Elkton in 1947; and therefore the marriage in Elkton was a nullity. There was no positive proof that the Florida marriage had ever been terminated by death or by annulment or divorce. The trial judge refused to advise an acquittal; but submitted the case with advisory instructions to the jury. Defendant was found guilty and was sentenced to confinement in the Maryland Penitentiary for a term of seven years. He has appealed here from the judgment of conviction.

In England bigamy was not a crime at common law, but it was an offense punishable by the ecclesiastical courts. By the Statute of 1 James I, ch. 11, enacted by Parliament in 1604, bigamy was made a felony punishable by death. 2 Alexander's British Statutes, Coe's Ed., 580, 581. In 1878 the Court of Appeals held in *Barber v. State,* 50 Md. 161, 170, that the British Statute was still in force in Maryland, modified by the Act of 1809, Nov. Sess., ch. 138, as to the punishment of the offense but not as to the grade of the crime. That Act, as re-enacted by the Legislature in 1937, provides: "Whosoever being married and not having obtained an annulment or a divorce *a vinculo matrimonii* of said marriage, the first husband or wife (as the case may be) being alive, shall marry any person, shall undergo a confinement in the penitentiary for a period not less than eighteen months nor more than nine years; provided, that nothing herein contained shall extend to any person whose husband or wife shall be continuously remaining beyond the seas seven years together, or shall be absent himself or herself seven years together, in any part within the United States or elsewhere, the one of them not knowing the other to be living at that time * * *." Laws of 1937, ch. 142, Code 1939, art. 27, sec. 19.

While it is the second marriage that constitutes the crime of bigamy, the first marriage is part of the *corpus delicti.* Accordingly it is a good defense to an indictment for bigamy that the first marriage was void, since bigamy can be committed only by the marriage of a person already married. Hence, in a prosecution of husband for a bigamous third marriage while still married to his second wife, he cannot be convicted if it appears that he had married the second wife during the first wife's life, because at the time of the third marriage he was not legally married to the second wife. *State v. Sherwood,* 68 Vt. 414, 35 A. 352; *State v. Goodrich,* 14 W. Va. 834; *Halbrook v. State,* 34 Ark. 511, 36 Am. Rep. 17; *McCombs v. State,* 50 Tex. Cr. Rep. 490, 99 S. W. 1017, 9 L. R. A., N. S., 1036; 3 *Greenleaf on Evidence,* 16th Ed., sec. 208.

At the trial of this case counsel for the defense called upon the State's Attorney to produce any records that he had in connection with the marriage of defendant and Dell Thompson. The State's Attorney had in his possession a photostat of a certified copy of a certificate of the marriage. The certificate was signed by the County Judge of Broward County, Florida, who certified that he united defendant and Dell Thompson in matrimony at Fort Lauderdale on August 9, 1941. The certified copy was signed by the State Registrar and also by the Director of the Bureau of Vital Statistics of the Florida State Board of Health, who certified that it was a true and correct copy of the original record on file in the office of the Bureau. The copy was also authenticated by the official seal of the State Board of Health. The trial judge ruled that he could not admit such a copy unless authenticated under the Act of Congress. We hold that it was admissible in evidence. Under our evidence statute, a copy of the record of any instrument which the laws of the State where the same may be executed require to be recorded and which has been recorded agreeably to such laws, under the hand of the keeper of such record and the seal of the court or office in which such record has been made, shall be good and sufficient evidence in any court of this State to prove such instrument. Code 1939, art. 35, sec. 50.

We acknowledge that a certified copy of an official record of a marriage is not the only means of establishing proof of the marriage. Admissions and declarations of the husband and wife are admissible to prove their marriage. *Hensel v. Smith,* 152 Md. 380, 389, 136 A. 900. A marriage may also be proved by the testimony of persons who attended the wedding. Whatever is admissible under the general rules of evidence and satisfies the triers of the facts to the requisite degree of certainty is sufficient to prove a marriage. *State v. Sherwood,* 68 Vt. 414, 35 A. 352. Of course, the safest practice is to present the record evidence, which is *prima facie* sufficient. While the testimony of husband or wife

or of persons who attended the wedding is good evidence of the marriage without the introduction of a certified copy of the record, yet under some circumstances the absence of a certified copy may create suspicion. *Dumas v. State,* 14 Tex. App. 464, 46 Am. Rep. 241, 243; 1 Bishop, Marriage, Divorce and Separation, secs. 1047-1063. We therefore hold that the rejection of the certified copy in this case was prejudicial error.

The basic issue on this appeal is whether the evidence in the case was legally sufficient to justify submission of the case to the jury. In 1949 the Legislature proposed a constitutional amendment to Article 15, Section 5, of the Constitution of Maryland providing that in the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction. Laws of 1949, ch. 407. The proposed amendment was adopted by the voters of the State at the election in November, 1950, but it did not become effective until the Governor's proclamation under Article 14, Section 1, of the Constitution. *Worman v. Hagan,* 78 Md. 152, 165, 27 A. 616, 21 L. R. A. 716. Governor Lane issued this proclamation on December 1, 1950. The instant case was tried in the Court below on November 30, 1950. Therefore, the constitutional amendment was not in effect at the time of the trial and the verdict in the case.

The Criminal Rules of Practice and Procedure, which were adopted by the Court of Appeals in December, 1949, and which applied to cases heard in the trial courts on and after January 1, 1950, provided that at the conclusion of the evidence for the State, the accused could request an instruction that the evidence was insufficient in law to justify his conviction. The request for such an instruction could be renewed at the end of the whole case. At the time of the trial of this case the instruction could be advisory only, although the refusal of the trial court to grant such an advisory instruction was reviewable by the Court of Appeals. That situation was changed

by the constitutional amendment, which became effective December 1, 1950, and by the subsequent action of this Court in deleting rule 6(b), which permitted. the accused to request an advisory instruction that the evidence was insufficient to justify his conviction, and in adopting rule 5A, which provides that the accused may request an instruction that the evidence is insufficient in law to justify his conviction, and in the event such an instruction is granted, the court shall instruct the clerk to enter a verdict of not guilty.

Under the rule prior to the constitutional amendment, it was the duty of the trial court, when requested, to give the jury an advisory instruction whether or not there was evidence legally sufficient to sustain a conviction. The giving or refusal of such an instruction is reviewable by the Court of Appeals. If there is any evidence before the jury on which to base a conviction, this Court will not disturb the verdict and will not inquire into or measure the weight of the evidence, for in such a case a request for a peremptory direction for a verdict of not guilty or similar advisory instruction is properly refused. *Commonwealth v. Merrill,* 14 Gray, Mass., 415, 77 Am. Dec. 336, 338; *Utterback v. Commonwealth,* 190 Ky. 138, 226 S. W. 1065; *State v. Sullivan,* 34 Idaho 68, 199 P. 647, 17 A. L. R. 902, 914; *France v. United States,* 164 U. S. 676, 17 S. Ct. 219, 41 L. Ed. 595; *Humes v. United States,* 170 U. S. 210, 18 S. Ct. 602, 42 L. Ed. 1011.

Defendant contends that there is no evidence that his Florida bride was not living at the time he married in Elkton in 1947 or that she had ever obtained a divorce from him. He testified that after he lived with her two or three weeks, she declared that she was going to get a divorce from him and that she was returning to her first husband. Soon afterwards he entered the military service and was overseas for nearly three years. When he returned to the United States, he wrote a letter of inquiry to Tallahassee in the hope of finding out whether his wife had obtained a divorce in Florida, but he did

not find any record that she had obtained a divorce in that State. He admitted that her original home was in Alabama, and that he did not search any of the Alabama records to find out whether she had obtained a divorce in that State. He further testified that he had not heard anything from her since 1941, and that when he married in Elkton in 1947, he "assumed that if she had wanted to remarry her former husband, she was going to get her divorce."

The essential question now before us is whether the marriage in Elkton was in fact valid. The question is not whether defendant assumed that it was valid or whether he entered into it without apparently being concerned whether it was valid or not. Compare *State v. Sherwood*, 68 Vt. 414, 35 A. 352. In a prosecution for bigamy the burden is on the State to prove by competent evidence beyond a reasonable doubt that the first marriage was valid, and that the first spouse was living at the time of the second marriage. *Fuquay v. State*, 217 Ala. 4, 114 So. 898, 56 A. L. R. 1264; *Hiler v. People*, 156 Ill. 511, 41 N. E. 181; *Dunlap v. State*, 126 Tenn. 415, 150 S. W. 86, 41 L. R. A., N. S., 1066; *State v. Yoder*, 113 Minn. 503, 130 N. W. 10, L. R. A. 1916 C., 686; *Dumas v. State*, 14 Tex. App. 464, 46 Am. Rep. 241.

However, the law presumes that a marriage continues until it is shown that it was terminated by death or by annulment or divorce. *Hensel v. Smith*, 152 Md. 380, 391, 136 A. 900. Proof of the first marriage in a prosecution for bigamy raises a *prima facie* presumption that there was no legal impediment to it, and in the absence of any evidence tending to show that there was some impediment, such proof is sufficient to warrant the jury in finding a valid marriage. *State v. Davis*, 109 N. C. 780, 14 S. E. 55; *Ferrell v. State*, 45 Fla. 26, 34 So. 220, 223; *State v. Kniffen*, 44 Wash. 485, 87 P. 837. Where the first marriage and the continuance of the life of the first wife are proved, the burden is cast upon the accused to show that a divorce was granted before the second marriage was performed. The State is not required to

make a general search of all the court records to prove a negative fact that ought to be peculiarly within the knowledge of the accused. *Fletcher v. State,* 169 Ind. 77, 81 N. E. 1083.

Where there is no direct proof that a defendant's wife was alive at the time of his second marriage, the presumption of the continuance of life conflicts with the presumption of innocence and these presumptions combine variously according to the circumstances of particular cases. The so-called presumption of divorce, sometimes applied in civil cases, has no place in the defense of a prosecution for bigamy. *Fletcher v. State,* 169 Ind. 77, 81 N. E. 1083; *Lesueur v. State,* 176 Ind. 448, 95 N. E. 239; *Long v. State,* 192 Ind. 524, 529, 137 N. E. 49, 24 A. L. R. 1234; *Fuquay v. State,* 217 Ala. 4, 114 So. 898, 56 A. L. R. 1264; *Bennett v. State,* 100 Miss. 684, 56 So. 777. Other adjudications, such as *Fleming v. People,* 27 N. Y. 329, while not specifically referring to the presumption of divorce, have ruled that the State in a prosecution for bigamy need not prove that a divorce has not been granted.

We think the general rule that the presumption of divorce has no place in a criminal case applies in a bigamy case where there were three marriages and the issue is whether there was a divorce prior to the second and third marriages. In Maryland the presumption of divorce has never been applied blindly even in civil cases without due regard to the facts of the particular case which may or may not make it a reasonable inference. *Dukes v. Eastern Tar Products Corporation,* 197 Md. 564, 80 A. 2d 39. In *Schmeizl v. Schmeizl,* 184 Md. 584, 594, 42 A. 2d 106, 111, Judge Markell, in discussing the presumption of innocence and the presumption of divorce in reference to the claim of an alleged widow, said: "It can not be assumed, in order to exonerate her from bigamy, that she is guilty of perjury both in obtaining a fraudulent divorce * * * and in prosecuting a fraudulent claim as widow."

There may be a difference between the ordinary bigamy case and the case at bar in respect to the relative means of ascertaining the fact of divorce. Burden of proof, in the secondary sense of the burden of going forward with the evidence, often depends upon considerations of convenience; but burden of proof in the fundamental sense of burden of persuasion seldom, if ever, depends upon such considerations. Whether the State or the defense relies on divorce or the possibility of divorce, the essential circumstance is that in a direct proceeding involving the validity of a marriage, divorce is a vital fact which should be proved by the party who relies upon it, and the absence of divorce is a negative fact which is practically unprovable except by a divorce of a subsequent date.

In this case we think that if the presumption of divorce is not applicable to create a reasonable doubt of continuation of the Elkton marriage, it cannot prove beyond a reasonable doubt the termination of the Florida marriage. We conclude that the evidence is not legally sufficient to convict, and the trial judge should have so instructed the jury. We cannot hold otherwise because, as the trial judge expressed it, defendant may escape a charge of bigamy by showing himself guilty of "trigamy."

*Judgment reversed and new trial awarded.*