## WOLFE *v.* STATE

[No. 30, September Term, 1958.]

450

*Decided December 17, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Morton L. Goldner,* for appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City, Joseph G. Koutz, Assistant State's Attorney for Baltimore City,* and *Norman Polski, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Henry M. Wolfe (the accused or defendant), who had been found guilty by a jury under an indictment for forgery, uttering and an attempt to obtain money by false pretenses by means of a bad check, was sentenced by the Criminal Court of Baltimore to a term of two years in the Penitentiary. The defendant appealed from the judgment and sentence.

On June 7, 1957, the defendant, who was fifty-nine years of age and was not unfamiliar with criminal court procedure, was arrested while attempting to cash a check at the downtown store of Stewart & Company, Inc. The check was payable to the order of Lester M. Baugh in the sum of $73. The defendant, who attempted to identify himself as the payee

of the check, subsequently claimed that he had found it on the street.

At the arraignment on June 24, 1957, the accused requested the appointment of counsel, but the request was refused, the court informing the accused that it was not obligatory to appoint counsel in every case. The accused then stated he might be able to obtain financial assistance to employ counsel from a relative in Virginia. The case was continued for that reason. At the trial on September 19, 1957, the accused did not renew his request and he was tried before a jury without counsel.

At the conclusion of the evidence offered by the State, the court, in the presence of the jury, advised the defendant as follows:

"[T]he State has produced all the evidence it intends to produce against you. Normally, you would ask me to tell the jury there is no evidence in the case legally sufficient to convict you under the various counts of this indictment. I will treat such a motion as having been made by you and I will deny or overrule the motion."

"[I]t is now up to you to decide whether you want to produce any evidence—including yourself, testimony of yours—for the consideration of the jury. * * * [Y]ou don't have to testify if you don't want to. If you don't testify I would think that the case which the State has made out—through the witnesses that have testified—would be pretty strong and substantial against you, and in support of this indictment."

The defendant did not interpose an objection; nor did he move for a mistrial or that the jury be instructed to disregard what had been said. Instead he took the stand to testify in his own behalf without protest. The trial judge examined him at great length and he was subsequently cross-examined by the State's Attorney. During the course of the examination, he frankly admitted that he had tried to cash the check, but denied that he had forged it. In his opening statement to

the jury—made against the advice of the court—he had made the same admission and denial.

At the close of the case, the court, in its advisory instructions, informed the jury that it should determine the credit to be given to the witnesses but overlooked advising the jury that it should also determine the weight of the evidence. The court properly instructed the jury as to the burden of proof, the presumption of innocence, the requirement that proof of guilt must be beyond a reasonable doubt, and the several verdicts it was possible to find under the evidence, including a verdict of "not guilty." In the course of its brief comments on the evidence, the court stated that, if the jury believed the State's witnesses, then, in the court's judgment, the defendant was "legally guilty" under each count of the indictment and, later in the charge, reiterated that the defendant was "guilty of undertaking to obtain money by false pretenses," although the jury was properly informed that such were only the opinions of the court and that the jury should "reach * * * [its] own conclusions even * * * on a question of law," and that it should ascertain the facts from the evidence it had heard. There were no objections to the court's instructions.

In his brief, filed in this Court by court-appointed counsel, the defendant primarily contends that the refusal of the lower court to appoint counsel to defend him was a denial of due process of law. He further contends that the remarks made by the court in the presence of the jury at the conclusion of the State's case, in denying a motion for a directed verdict, which the defendant had not requested, was prejudicial error; and that the remarks made by the court at the same time, in advising him of his right to decline to testify in his own behalf, was a violation of his constitutional privilege against self-incrimination. We shall first consider the questions posed by the alleged prejudicial remarks.

### (i). Remarks Of Trial Court.

In this State, although the jury is still the judge of the law as well as the facts, an amendment to Article XV § 5 of the Constitution, effective December 1, 1950, empowered the

court "to pass upon the sufficiency of the evidence to sustain conviction." The amendment has been implemented by statute (Code [1957] Art. 27 § 593), and by the rules of this Court (Rule 738, a, b). See *Auchincloss v. State,* 200 Md. 310, 89 A. 2d 605 (1952). Cf. *Wright v. State,* 198 Md. 163, 81 A. 2d 602 (1951):

Rule 738 a, *supra,* provides, in part, that "[a]t the conclusion of the evidence offered by the State the *accused may request* an instruction that the evidence is insufficient in law to sustain his conviction." (Emphasis added.) The rule does not require the motion to be made out of the presence of the jury.

Since the defendant was not represented by counsel, it was not improper for the court to inform him of his right to file the motion, but instead of treating it as having been filed and forthwith denying or overruling it, the court should have inquired of the defendant whether or not he desired to interpose such motion. Obviously the motion should be received and considered when, and only when, it is requested by the accused or his counsel. However, we are not persuaded that the court committed reversible error in this respect.

It is apparent the trial court was trying to assist the accused to preserve his rights under the rule. What the court said in treating the motion as offered and refused, was nothing more than a legitimate conclusion that the State had made out a *prima facie* case. It was improper for the court to treat the motion as it did, but it was no more prejudicial than it would have been if the defendant, when informed of his rights, had himself made a request for the motion. In that event the court's action in overruling the motion in the presence of the jury would not have been prejudicial error.

It was also not improper, of course, for the trial court to inform the defendant that he was not required to testify and the legal effect of his election to remain silent, as well as the consequences which might ensue should he elect to waive the constitutional privilege, leaving it to the defendant to decide what he should do. But, in so doing, the court should not have commented on the weight of the evidence or suggested that the defendant should take the stand and testify.

On this occasion, the trial court was attempting to assist the defendant to make a decision as to whether he should testify or remain silent, but, in so doing, we think it is clear that what the court said constituted irremediable error. The remarks—"if you don't testify I would think that the case which the State has made out * * * would be pretty strong and substantial against you and in support of * * * [the] indictment"—were not only unnecessary for the purpose intended, but such remarks could only have prejudiced rather than helped the defendant irrespective of what he thereafter did.

Generally, the prejudicial effect of improper remarks may not be raised on appeal unless preserved by an appropriate objection, i. e., a motion to withdraw a juror and declare a mistrial, or a motion to strike out the remarks and instruct the jury to disregard them. *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955). In the instant case, the defendant, who was not informed of his right to do so, did not object either when the remarks were made or at any time during the course of the trial. Moreover, he did not move for a mistrial or for an instruction that the remarks be disregarded. The defendant was subsequently informed of his right to move for a new trial, but he did not avail himself of this right either. Instead he entered this appeal.

The State contends that, even if error was committed by the court in causing the defendant to take the stand and testify, he thereby waived his right to object to what the court had said or done before. In the view we take of this case, we do not reach that question. Instead, we are convinced that the error—which we think was material to the rights of the defendant—was such as the court could not have corrected even if it had attempted to do so. Under such circumstances we think we must of our own motion take cognizance of and correct the plain error by awarding the defendant a new trial even though such error may not have been properly includible in the assignment of errors in this case. Maryland Rule 739 g.

### (ii). Failure To Appoint Counsel.

Inasmuch as the case must be retried it is unnecessary for us to decide whether the refusal of the trial court to appoint counsel was a denial of due process. On remand the trial court will advise the defendant of his right to obtain counsel pursuant to Rule 723 b, if he appears in court without an attorney to represent him. And, unless the defendant elects to proceed without counsel, the court will also give due consideration to the question of whether the case is a serious one requiring the assignment of counsel. See Rule 723 b, *supra; Hill v. State,* 218 Md. 120, 145 A. 2d 445 (1958) ; *Bryant v. State,* 218 Md. 151, 145 A. 2d 777 (1958).

> *Judgment reversed, and case remanded for a new trial.*

HENDERSON, J., filed the following dissenting opinion.

The reversal in this case is based upon a finding that the trial court committed prejudicial error in commenting upon the case made out by the State, at the close of the State's testimony. In the context, I think the comment imported only that the State had made out a *prima facie* case, and the opinion recognizes that, so construed, the comment would not be prejudicial error, if error at all. Even if the comment can fairly be said to go to the weight of the evidence, I think the present rules would not forbid such comment, provided the final determination is left to the jury. Compare Rule 739 e, and Rule 554 (formerly Rule 6 b. G.R.P.P., Pt. Three, III). The purpose of the rules was to restore to a trial judge much of the common law power which had been whittled away under the State practice. See Explanatory Notes, Code (1947 supp.) pp. 2077-2082, and 9 Wigmore, *Evidence* (3d ed.) §§ 2551, 2551a. Even before the adoption of these rules, it was held that, ordinarily, a caution to the jury that they should disregard any expression of opinion by the court, and that they are the final judges, would cure the error. Cf. *Western Maryland Dairy Corporation v. Brown,* 169 Md. 257, 268, and *Leon v. State,* 180 Md. 279, 288, *certiorari* denied 316 U. S. 680.

I am also disturbed by the holding that the error was so plain that it should be noticed by this court, even though no objection was made. Our prior decisions have consistently taken the view that failure to object is a waiver, and that any other rule would prevent the trial court from correcting what may have been a mere inadvertence. See *Basoff v. State*, 208 Md. 643; *Banks v. State,* 203 Md. 488; *Asner v. State,* 193 Md. 68; and cases cited. The fact that the accused was not represented by counsel would not seem to call for the application of a different rule. Cf. *Jackson v. State,* 214 Md. 454, 460. As Mr. Justice Frankfurter admonished, in his concurring opinion in *Johnson v. United States,* 318 U. S. 189, 202, we should not "turn a criminal appeal into a quest for error."

In any event, I cannot find that the accused was prejudiced by the comment. The accused had indicated in his opening statement to the jury, at the outset of the trial, that his defense was based solely on his contention that he had not signed the name of the unknown or fictitious payee. He never denied that he had uttered the check, in an attempt to obtain money by falsely representing himself as the payee. When he took the stand, he admitted that he impersonated the payee, and merely denied that he had admitted to the police that he had made and signed the check, and swore that he had found it on the street, fully executed. Even if the trial court had directed a verdict in his favor on the forgery charge (and there was evidence to go to the jury as to that), the conviction on the false pretense charge would still be valid. Indeed, his sworn admission in open court and on the stand was virtually a plea of guilty. *Beard v. State,* 216 Md. 302; *McCoy v. State,* 216 Md. 332, 341. The sentence of two years was supportable on the charge of attempted false pretense alone.

I find no merit in the contention that the accused was compelled to take the stand in violation of his constitutional privilege against self-incrimination. Compare *Barber v. State,* 191 Md. 555, 556, and *Davis v. State,* 168 Md. 10, 12. I also find no violation of his constitutional right to counsel,

458

under the circumstances of this case. Cf. *Betts v. Brady,* 316 U. S. 455. See also *Crooker v. California,* 357 U. S. 433, and *Cicenia v. LaGay,* 357 U. S. 504. I think the judgment should be affirmed.