## SHELTON *v.* STATE

[No. 19, October Term, 1951.]

*Decided November 1, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Ignatius J. Keane,* with whom was *Albert R. Hassall* on the brief, for appellant.

*A. T. Hartman, Special Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *C. J. Lancaster, State's Attorney for Prince George's County,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Walter S. Shelton, of College Park, has appealed here from a conviction on the charge of violating the local

lottery law of Prince George's County. Laws of 1939, ch. 258, Code P. L. L. of Prince George's County, 1943 Ed., sec. 608.

For some years appellant has been the owner and operator of Otto's Bar and Grill in Colmar Manor. On January 16, 1951, at about 10:30 a.m., the bar was visited by the sheriff, two detectives of the county police force, and an informer named John Phillips. The sheriff and Phillips were the first to enter. They bought two beers, and while they were drinking Phillips asked the bartender, Herman Johns, whether he could play a number. The bartender handed Phillips a pad and pencil, and Phillips wrote the numbers "513" and "315" on a slip and added "50 cents" in parenthesis, indicating that he was playing 50 cents on each number. Phillips then handed the slip along with a marked dollar bill to the bartender, and the bartender put them in a drawer behind the bar. The sheriff thereupon identified himself and placed the bartender under arrest. The two detectives then walked in, and immediately recovered the slip and the dollar bill from the drawer. They also found in the drawer another slip on which "518" was written. On the cash register back of the counter there were several pads of slips. Sticking in the frame of the mirror above the cash register was a paper displaying "032" in large blue figures. One of the detectives took the bartender to the police station in Hyattsville. About twenty minutes later appellant came into the bar. When questioned by the officers, he asserted that he had no connection with the lottery whatever and did not even know that it was being operated. The officers, however, secured a warrant for his arrest.

The indictment charged that appellant on or about January 16, 1951, "unlawfully did promote and was concerned in carrying on a lottery" contrary to the statute. The statute provides: "If any person shall within Montgomery or Prince George's Counties keep, set up, or promote, or be concerned as owner, agent, or clerk, or in any other manner, in managing, carrying on, pro-

moting, or advertising, directly or indirectly, any policy lottery, policy shop, or any lottery, * * * he shall be fined upon conviction of each said offense not more than $1,000 or be imprisoned not more than three years or both." Appellant moved to dismiss the indictment, and the motion was overruled.

At the close of the case appellant moved for a directed verdict of not guilty, but the trial judge overruled the motion and submitted the case to the jury. Appellant was found guilty and was sentenced to the Maryland House of Correction for a term of six months.

*First.* Appellant claims that the indictment was defective because it did not allege the charge with sufficient particularity. He contends that the indictment should have alleged the particular kind of lottery, such as policy lottery or numbers, which he was accused of promoting or carrying on. It is an essential requisite of every indictment that it shall allege such facts in connection with the commission of the crime as will put the accused on full notice of what he is called upon to defend and establish such a record as will effectually bar a subsequent prosecution for the same crime. *State v. Lassotovitch,* 162 Md. 147, 150, 159 A. 362, 81 A. L. R. 69; *Petrushansky v. State,* 182 Md. 164, 32 A. 2d 696. However, as we pointed out in *State v. Wheatley,* 192 Md. 44, 50, 63 A. 2d 644, the courts in recent years have come to realize that much of the prolixity which characterized the indictments under the early common law can be disregarded without any infringement of the right of the accused to be informed of the nature of the accusation against him, and so it has become the modern policy of the courts to disregard extremely technical rules and require only that an indictment shall fully allege the essential elements of the crime charged.

The Maryland Code expressly provides that in any indictment for violation of the law prohibiting gaming, or for violation of the law prohibiting the drawing of lotteries or the selling of lottery tickets or other device in the nature thereof, it shall not be necessary to set forth

the particular kind of gaming or gaming table, or to set forth the particular scheme of lottery, but it shall be sufficient if the indictment sets forth that the defendant kept a "gaming table," or that "he drew a lottery," or sold a "lottery ticket," as the case may be; but the defendant may, by application to the State's Attorney, obtain a statement more particularly describing the offense intended to be proved under such indictment. Code 1939, art. 27, sec. 652.

Thus, in *Wheeler v. State,* 42 Md. 563, 567, where the appellant was indicted for violating the statute providing that no person shall keep any gaming table, or any house, vessel or place, for the purpose of gambling, Judge Alvey said: "The offense is not confined to keeping a gaming table, but the keeping of any house or other place, *for the purpose of gambling,* is within the letter of the law. And in an indictment under this statute, it is not necessary to set forth the particular kind of gaming allowed, or the particular kind of gaming table kept by the accused; * * * but it is sufficient to charge the offense in the terms of the statute, as has been done in this case."

Appellant vigorously asserts that the numbers game is entirely different from the policy game. He says that in the numbers game the player chooses a number of three digits, and the winning number is determined by mathematical calculations based on the prices paid at a certain race track; whereas in the policy game the player chooses a number between 1 and 78, and the winning number is determined by drawing from a wheel. However that may be, the essential element of a lottery is the awarding of a prize by chance, and the exact method adopted for the application of chance to the distribution of the prizes is immaterial. This was recognized in *Forte v. United States,* 65 App. D. C. 355, 83 F. 2d 612, 616, 105 A. L. R. 300, where Justice Van Orsdel, after referring to the differences between the numbers game and the policy game, said: "The fundamental point is that in each case there is the offering of a prize, the

giving of a consideration for an opportunity to win the prize, and the awarding of the prize by chance."

We conclude that the indictment in the case at bar was sufficient. Of course, the right to a bill of particulars is a privilege allowed to the accused where the indictment found against him is so general that it fails to disclose information sufficient to afford him a fair and reasonable opportunity to defend himself. In any criminal prosecution a motion for a bill of particulars is addressed to the sound discretion of the court, and the court's action thereon is not the subject of an appeal unless there is some gross abuse of discretion resulting in injury to the accused. *Leon v. State,* 180 Md. 279, 285, 23 A. 2d 706, *certiorari* denied, *Neal v. State of Maryland,* 316 U. S. 680, 62 S. Ct. 1107, 86 L. Ed. 1753.

*Second.* Appellant contends that there was no evidence in this case legally sufficient to justify its submission to the jury, and therefore the trial judge should have directed a verdict of not guilty. The amendment to Article 15, Section 5, of the Constitution of Maryland, which was adopted by the voters of the State at the general election in November, 1950, and which became effective upon the Governor's proclamation on December 1, 1950, provides: "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." Laws of 1949, ch. 407; *Wright v. State,* 198 Md. 163, 169, 81 A. 2d 602, 605.

The present rule of this Court, passed in accordance with the constitutional amendment and the supplementary statute, Laws of 1949, chapter 596, provides that the accused may request an instruction that the evidence is insufficient in law to justify his conviction, and in the event such an instruction is granted, the court shall instruct the clerk to enter a verdict of not guilty. Criminal Rules of Practice and Procedure, Rule 5A.

In order to meet the test of legal sufficiency in any civil or criminal case, as we said on the motion for

reargument in *Edwards v. State*, 198 Md. 132, 83 A. 2d 578, the evidence must either show directly the fact to be proved or support a rational inference of the fact. In a civil case the fact must be shown or the inference supported by a preponderance of probability, or an opposite preponderance must be overcome. In a criminal case the fact must be shown or the inference supported beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. Before a verdict of guilty is justified, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence. *Bullock v. Commonwealth*, 249 Ky. 1, 60 S. W. 2d 108, 94 A. L. R. 407; 2 Wharton, Criminal Evidence, 11th Ed., sec. 922.

While the Court of Appeals now has the constitutional authority to pass upon the sufficiency of the evidence to sustain a conviction in a criminal case tried before a jury, this Court will not inquire into or measure the weight of the evidence, and will not reverse the judgment if there is any proper evidence before the jury on which to sustain a conviction. *Wright v. State*, 198 Md. 163, 81 A. 2d 602; *Commonwealth v. Merrill*, 14 Gray, Mass., 415, 77 Am. Dec. 336, 338; *State v. Sullivan*, 34 Idaho 68, 199 P. 647, 17 A. L. R. 902, 914; *Humes v. United States*, 170 U. S. 210, 18 S. Ct. 602, 42 L. Ed. 1011.

We are convinced that the evidence in this case was sufficient to warrant its submission to the jury. In the first place, the State showed conclusively that the numbers game was being operated in the bar owned and operated by appellant. His bartender accepted the numbers slip and the dollar bill without objection or hesitation and put them in a drawer. Besides this slip the officers found in the drawer another slip, on which was written "518." An officer testified that "518" was the winning number received from a race track on the previous Saturday. In addition, several pads of the same size as the numbers slips were found on the cash register. Moreover, the number "032" was prom-

inently displayed on the mirror behind the bar. An officer testified that "032" was the number received from a race track in Florida. In explanation of this he said: "That is the number that came out on the day before the day of the arrest. That was placed over the cash register. Anyone comes in, they just look at the cash register to see what the number is." If all this evidence is true, there can be no reasonable doubt that the numbers game was being operated openly and notoriously in appellant's bar.

Appellant swore that he had never known his bartender to sell a number in his place of business. Yet appellant came there every morning, usually about 11 o'clock, and stayed there for at least a couple of hours. Furthermore, there was a very close association between appellant and his bartender. They were first cousins, and the bartender had been working for appellant at this location for six years.

The bartender, professing the innocence of appellant, testified: "He told me he would fire anyone he saw in there messing with numbers." Nevertheless, on cross-examination he admitted that at his trial in the police court in Hyattsville he pleaded guilty to the charge of selling numbers in appellant's bar and was fined $50. When asked why he was not fired by appellant, he answered that he was fired but rehired. Finally, appellant, who declared that he would not employ anyone who sold numbers, admitted that he had helped his bartender to get out of his trouble and had put him back on his job in the bar. His only explanation of this was that the bartender told him he did not sell any numbers on the day of his arrest, but the numbers were sold "by the other fellow."

We are convinced that the trial judge was justified in submitting the case to the jury. The judgment of conviction will therefore be affirmed.

*Judgment affirmed, with costs.*