ELIZABETH A. HENSEL et al., Executrices, *v.*
ELSA DUGENT SMITH.

*Evidence — Photostatic Copies — Genuineness of Signature —*
*Proof of Marriage.*

Code, art. 35, sec. 7, permitting comparison of a disputed writing with any writing proved to be genuine, as evidence of the genuineness or otherwise of the disputed writing, requires the comparison to be made with original signatures, and the use of photostatic copies is not permissible unless it is impossible to obtain the originals, and the copies must be shown by competent and qualified witnesses to be exact. p. 384

The admissibility of a photograph in evidence is a question addressed largely to the discretion of the trial court. p. 385

On an issue as to the marriage of decedent, in determining whether the signature on the application for a marriage license was his signature, it was proper to use, for the purpose of comparison with undisputed signatures by him, a photostatic copy of the application, shown by evidence to be a correct copy, the original application having been offered in evidence with the copy, but having been withdrawn by permission of the court, as being a record of another state. pp. 385-387

Evidence that decedent was the man who signed an application for a marriage license, that one who claimed as his widow was the woman named in the application, and that the persons whose names so appeared were the persons married by a clergyman under approximately similar names, on the date of the application, in the city in which the application was made, *held* sufficient to go to the jury. pp. 387-389

On an issue as to the ceremonial marriage of decedent and one claiming after his death as his widow, statements by deceased that they were married were admissible to prove the marriage, while testimony by witnesses that they knew decedent as a single man and the claimant as a single woman was admissible to disprove the marriage. pp. 389-391

The recalling of a witness for plaintiff after the close of defendant's case is a matter entirely in the discretion of the trial court.                                        p. 391

A letter written by a witness, not bearing on any issue in the case, cannot be introduced to affect her credibility.      p. 391

*Decided February 17th, 1927.*

Appeal from the Baltimore City Court (DUFFY, J.).

Petition by Elsa Dugent Smith, filed in the Orphans' Court of Baltimore City, asserting a claim as widow of G. Edgar Smith, on which petition and the answer thereto of Elizabeth A. Hensel and Josephine B. Osbourn, executrices named in the will of said deceased, an issue was sent to the Baltimore City Court for trial by a jury. From the rulings upon such trial, said executrices appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*H. Webster Smith* and *Charles Ruzicka,* with whom were *E. Ridgely Simpson* and *Smith & Smith* on the brief, for the appellants.

*Lewis W. Lake,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

On July 18th, 1925, a certain G. Edgar Smith died, leaving a will admitted to probate in the Orphans' Court of Baltimore City, whereby he left his property to his sisters, Elizabeth A. Hensel and Josephine B. Osbourn, and in which they were named as executrices. Subsequently, on March 31st, 1926, Elsa Dugent Smith, the appellee, filed a petition in the Orphans' Court, wherein she alleged that she was the widow of the said G. Edgar Smith; that she and the decedent were married at Wilmington, Delaware, on

February 10th, 1912, by a duly ordained minister of the gospel, and that in consequence of the death of the said G. Edgar Smith she thereupon became his lawful widow. The appellants, on April 14th, 1926, filed their answer to said petition, admitting all of the allegations contained therein except the marriage and widowhood of the appellee. Whereupon an issue was sent to the Baltimore City Court to be tried by a jury, as follows: "Was Elsa Dugent Smith the lawful wife of G. Edgar Smith at the time of his death on the 18th day of July, 1925?" and from the answer "Yes" of the jury on this issue the case now comes before us.

It appears from the evidence that, on February 10th, 1912, application for a marriage license, in accordance with the laws of Delaware, was made by one George E. Smith to James W. Robinson, a justice of the peace at Wilmington, Delaware, to marry a woman named Elsie G. Dugent. On the same day, February 10th, 1912, it appears from a photostatic copy of the marriage records of Trinity Protestant Episcopal Church of Wilmington, Delaware, that a George Edgar Smith and Elsa Grace Dugent were married by the Rev. Frederick M. Kirkus, rector of the church. From that date until the day of the death of G. Edgar Smith, if they were the parties married on that day, his marriage to the appellee remained a secret, and the only person testifying in this case, pretending to have knowledge of the marriage, was the sister of the appellee, Maude E. Dugent. There is no evidence of the cohabitation except as testified to by Maude E. Dugent. To the world and to their friends—and they appear to have had many mutual friends—they were as single and unmarried as before the alleged marriage. The appellee resided with her parents until their death, then maintained an apartment of her own; the decedent had his apartment, where he was not visited by the appellee or any other woman. It appears that down to the time of the death of the decedent he and the appellee were on the most friendly terms. Their relations were always cordial.

There are one hundred and sixty-five exceptions noted in the record in this case, but fortunately for us they resolve themselves into a small number of groups. The questions to be decided are of general application, and the law and the facts can be discussed without much detail.

We are not called on to find as a fact that the decedent and the appellee were married as alleged, but to determine:

1. Whether there was evidence sufficient to go to the jury that G. Edgar Smith was the man who signed the application for a marriage license at Wilmington on February 10th, 1912, and the appellee the woman named therein as Elsie G. Dugent.

2. Whether the marriage license application signed "G. E. Smith" was properly in evidence as the "disputed signature."

3. Whether the parties to whom the license was issued were the same parties who were on the same day married by the Rev. Mr. Kirkus.

4. Whether the admissions or statements alleged to have been made to the sister, Maude E. S. Dugent, were admissible.

If the identification of the parties named in the marriage license record depends, as it does to a considerable extent in this case, upon proof of the signature of the applicant, then the questions which arise from the introduction of the evidence tending to show that the decedent was the one who signed the application become an important factor. There was no eye witness to the application for marriage license except the justice of the peace, Robertson, who testified by deposition, nor any to the marriage, except the Rev. Mr. Kirkus, who also testified by deposition; and neither of them could recognize the appellee nor identify the photograph of the decedent. The blanks in the marriage license application were filled in by a constable named Green, since deceased. Neither of the subscribing witnesses to the church marriage record testified. The only thing, therefore, by which the decedent, George Edgar Smith, can be identified

as the party to whom the license was issued, is the signature, "G. E. Smith," on the application for marriage license. It was testified by many competent witnesses, who were familiar with his handwriting, that the signature which appeared upon the photostatic copy of the license application was the signature of G. Edgar Smith, the decedent, and if the photostatic copy, together with the undisputed signatures of the decedent, furnish the proper standard of comparison, there can be no doubt of the admissibility of such testimony.

Section 7 of article 35 of Bagby's Annotated Code provides that: "Comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine shall be permitted to be made by witnesses, and such writing and the evidence of witnesses respecting the same may be submitted to the court and jury, or the court, as the case may be, as evidence of the genuineness or otherwise of the writing in dispute." It is evident from this statutory requirement that the comparison of handwriting should be made with original signatures, and that the use of photostatic copies would not be permissible unless it were impossible to obtain the originals; and that in such case photostatic copies could only be substituted when shown by competent and qualified witnesses to be exact copies of the originals.

The appellee produced as a witness, in the Baltimore City Court, Alfred Whartenby, who testified that he was a clerk in the office of the clerk of the peace of Wilmington, Delaware. Through this witness she offered in evidence what purported to be the original of the marriage license application of George E. Smith to marry Elsie G. Dugent. While Mr. Whartenby was on the stand, the proposition was made by appellee's counsel to offer in evidence a photostatic copy of the original, appellee's counsel saying: "I am going to ask your honor to accept that in evidence so that the original record can be taken back," counsel then stating, "I will

show them both to the jury for comparison," which, according to the record, was done.

The evidence from which there appears to be extraneous proof that the photostatic copy was a correct copy is contained in the deposition, taken at Wilmington, of J. L. Wright, clerk of the peace for the Court of Newcastle County, Delaware, who testified that: "Plaintiff's Exhibit No. 1 is a photostatic copy of an application made for marriage license and to the best of my knowledge they are the same as the original," and the testimony of James W. Robertson, a justice of the peace of Wilmington, Delaware, who was asked: "Q. Will you compare the original with the plaintiff's exhibit No. 2 (deposition), which is a photostat of the original, and state if there is any difference in their size, in their printed or written matter that appears thereon, or their appearance in any particular?" to which the witness answered: "There is a little bit of difference in the size of the paper; it is about a quarter of an inch longer—well, I guess inside of the black margin would be the same, inside of the black margin it is the same."

Samuel C. Malone, a handwriting expert, who testified for the appellants that he had made comparisons, at Wilmington, a month before the trial, of certain undisputed signatures of the decedent with the disputed signature on the license application, in answer to the question of the court, "Do you recognize that photostatic copy that you hold in your hand as a copy or picture of the document you saw up in Wilmington?" said "Yes, sir; absolutely so."

In addition to the oral evidence, the court, having access to both the original signature and the photostat, had a better opportunity to pass upon the evidence of the accuracy of the photostat than is usually afforded where the originals of inaccessible writings or public documents are beyond the jurisdiction of the court. "The admissibility of a photograph in evidence is a question addressed largely to the discretion of the trial court, and its decision will seldom be

reviewed by an appellate tribunal." 10 *R. C. L.* 1154. In this case we assume that the trial judge did not allow the original to be withdrawn until he had satisfied himself of the accuracy of the photostatic copy, thereafter used as the disputed writing, with which the undisputed signatures were compared.

It is well settled that photographic copies of signatures are secondary evidence and are only admissible when the originals are not available, but when they are not available the use of photographic copies is permissible. *Wigmore, Evidence* (2nd Ed.), sec. 2010; 31 *A. L. R.* 1436; *Stitzel v. Miller,* 250 Ill. 72, 34 L. R. A. (N. S.) 1004, Ann. Cas. 1912B, 412; *Moncur v. Western Life Indemnity Co.,* 269 Pa. 213; *Grooms v. State,* 40 Tex. Cr. Rep. 319; *In re McClellan's Estate,* 20 S. D. 498; *Geer v. Missouri Lumber and Min. Co.,* 134 Mo. 85; *Luco v. United States,* 23 How. 515.

In the case of *Tome v. Parkersburg R. R. Co.,* 39 Md. 93, this Court would not allow a photograph of certain signatures to be offered in evidence, Judge Bowie saying: "Photographers do not always produce exact facsimiles of the object delineated, and however indebted we may be to that beautiful science for much that is useful as well as ornamental, it is at most a mimetic art, which furnishes only secondary impressions of the original that vary according to the lights and shadows which prevail whilst being taken." The decision, however, did not turn on this statement, but upon the broad proposition that at that time, which was prior to the enactment of section 7 of article 35 of the Code, comparison of disputed writings with those admitted to be genuine was not allowable. The tendency of modern times is to permit the use of photographs, and in the case of inaccessible writings, such as public records of another state, to admit them as secondary evidence when they are satisfactorily shown to be accurate and exact reproductions.

In this case the court could have impounded the original marriage license application, and have retained it until the

evidence was in.   But in view of the fact that the official
of Newcastle County, Delaware, who had it in his custody,
had requested its withdrawal so that he could take it back to
Wilmington, it would have been an arbitrary exercise of its
power for the court to have refused the request, after the
clerk at Wilmington had caused a photostatic copy of the
original to be made for use at the trial in Baltimore.   For
us to declare the handwriting evidence inadmissible for this
reason would be very technical.   For the reasons herein
stated, we hold that, under the circumstances in this case,
there was no error in the admission of the photostatic copy
of the marriage license application, nor as to the compari-
son therewith of the undisputed signatures of the decedent,
and that there was sufficient evidence to go to the jury to
show that the signature "G. E. Smith" to the application
for license was the signature of the decedent.

Was there evidence sufficient for submission to the jury
that the parties named in the marriage license application
were the same parties who were married the same day by the
Rev. Mr. Kirkus?   It is proven without contradiction that
the blanks in the license application were filled in by Charles
Green, a constable who frequently assisted the justice of the
peace, James W. Robertson, "in clerical work."   In the body
of the application the name of the applicant is written
"George E. Smith," residence "Philada., Pa.," and the
female's name is "Elsie G. Dugent" of Baltimore, Md.   The
name of the applicant's father is given as Charles, while
the names of his mother and Elsie G. Dugent's parents are
not given.   Occupation of applicant, clerk, female, none.
Age of applicant, forty-six; female, thirty; both single.   The
identity of the applicant was questioned because his name
was written as George E. Smith, whereas the decedent was
generally known as G. Edgar Smith.   The application was
signed "G. E. Smith," and in all the signatures of George
Edgar Smith, the decedent, offered in evidence, there being
four identification cards from the Union Trust Company,
Baltimore, and fifteen cancelled checks, his signature appears

as "G. E. Smith," and not G. Edgar Smith or George E. Smith. Much was also made of the fact that the name of the female was written Elsie instead of Elsa. The name Elsa is uncommon, while Elsie is not, and inasmuch as the constable wrote the names, we attach little importance to the variation. The same day a man named George Edgar Smith, age forty-six, residence Philadelphia, Pa., who gave the name of his father as Charles Smith and the name of his mother as Lydia Allen, and a woman who gave her name as Elsa Grace Dugent, age thirty, residence 2028 Maryland Avenue, Baltimore, Md., whose father's name was given as William Dugent and whose mother's name was given as Emma Lutz, presented themselves at the residence of the Rev.. Frederick M. Kirkus, rector of Trinity Protestant Episcopal Church at Wilmington, Delaware, and were married in the presence of Ada C. Kirkus, sister of the rector, and Robert Foster, sexton of the church. It is shown by the evidence that the names of the respective parents of the parties were the names of the parents of George Edgar Smith, the decedent, and of Elsa Grace Dugent, the appellee, and that at that time the appellee lived with her parents at 2028 Maryland Avenue, in Baltimore.

Judge McSherry, in *Bowman v. Little,* 101 Md. 292, said: "It is true, generally speaking, identity of names is *prima facie* evidence of identity of persons; but the names, of course, must be identical, and this involves the identity of the Christian names, the identity of the initials thereof being insufficient." The criticism of the names in the Bowman marriage certificate by Judge McSherry cannot apply to the marriage record before us, which, together with the other evidence as to the identity of the parents of the parties, and of those named in the license application, was properly submitted to the jury. It is true that George Edgar Smith was about fifty years of age and Elsa Grace Dugent about twenty-four, but there is nothing unusual about parties marrying with such disparity of ages reducing the one and increasing the other so as to make the difference appear less.

The subsequent conduct of the parties, too, in concealing the fact of their marriage, may account for the misrepresentation of George Edgar Smith as to the place of his residence, though there was evidence that at one time he had lived in Philadelphia. So far as the evidence in this case shows, they were married to each other or they were not married at all.

Were the admissions or statements alleged to have been made to the sister, Maude E. S. Dugent, admissible?

It appears from the testimony of Maude E. S. Dugent that she knew the decedent and her sister, the appellee, had gone to Wilmington at or about the time of the alleged marriage, and that shortly thereafter the decedent stated to her that they had been married, showed her the marriage certificate, and asked her to keep it a secret. It is contended by the appellants that this evidence is not admissible under the authority of *Bowman v. Little,* 101 Md. 273. We are of the opinion that the rule laid down in *Bowman v. Little* does not apply in this case, but that the law is, as stated by Judge Bartol in *Craufurd v. Blackburn,* 17 Md. 56, as follows: "If marriage be proved or admitted, declarations of the parents will not be admitted, to defeat the consequences of marriage, as that the children are bastards; but where the question is marriage *vel non,* "the declarations of the parties themselves, if deceased, that they were or were not married, provided they were made *ante litem motam,* are admissible evidence of the fact declared." And on page 57 he further says: "As we have said before, all the authorities establish that where the question is marriage *vel non,* the declarations of the parties to the alleged marriage, if deceased, are admissible either to prove or disprove it." In *Brell v. Brell,* 143 Md. 448, Judge Thomas said: "The admissions and declarations of the husband and wife have always been accepted in this state to prove their marriage." 38 *C. J.* 1336; 1 *R. C. L.* 493; *Schouler on Marriage, Divorce, and Separation* (6th Ed.), sec. 1226. They are also admissible as evidence of pedigree, and as such are an exception to the prohibition against hear-

say evidence. *Craufurd v. Blackburn, supra; Copes v. Pearce,*
7 Gill, 247; 22 *C. J.* 239; 38 *C. J.* 1337.

The case of *Bowman v. Little, supra,* is the one most
strongly relied on by the appellants in this case, but the facts
are not the same. In *Bowman v. Little,* the decedent Bow-
man had married and a child was born of the marriage. After
his death, a woman appeared who claimed to be his wife by
a former marriage. If the claim had been successful, it
would have resulted in bastardizing the offspring of the sec-
ond marriage, and the rule of evidence adopted was that laid
down in *Shelford on Marriage and Divorce,* quoted by Judge
McSherry as follows: "In a suit for nullity of marriage by
reason of a former marriage, strict proof of the identity of
the parties is requisite. It is a clear rule that the identity
must be proved by other testimony than that of the parties
themselves; that is, by witnesses who can speak of the facts
from their own personal knowledge," and this is the rule fre-
quently followed in cases of bigamy and criminal conversa-
tion. "In case of conflicting marriages of the same spouse,
the presumption of validity operates in favor of the second
marriage." 38 *Cyc.* 1326.

In *Bowman v. Little, supra,* the court held the declarations
of the decedent, made to his physician and to a nephew in
support of the prior marriage, to be inadmissible, but it could
only have been based on the theory that, the ceremonial mar-
riage not having been strictly proved, the declarations of the
parties could not be received to identify those named in the
marriage certificate, the court having held that there was no
sufficient identification of the parties named in the certificate.
The case of *Bauder v. Blackiston,* 149 Md. 322, cited, quoted,
and discussed by the appellants, presents an entirely differ-
ent state of facts. It was a claim of marriage based on habit,
reputation, and acknowledgment, while the case before us is
a ceremonial marriage, and the standards of proof are not at
all alike.

The appellants press in both the evidence and the prayers
what they call the "doctrine of continuity." In support of
it they offer a score of witnesses who testified they knew the

decedent as a single man and the appellee as a single woman. Such evidence is admissible as contradictory of the claim of marriage. The law assumes that a marriage entered into continues until interrupted by death or divorce. *Wigmore's Evidence* (2nd Ed.), sec. 2530; 38 *C. J.* 1328; *Schouler on Marriage, Divorce, etc.* (6th Ed.), sec. 1251. There was no evidence in this case that the marriage, if contracted, had been dissolved except by the death of the decedent.

Some stress was laid in the oral argument on several exceptions which were taken to the conduct of the appellee's counsel at the trial. In every instance we find the court reprimanded him, but we do not find that any of the statements made were calculated to prejudice the appellants' case.

Exceptions 121 to 157, both inclusive, were taken to the testimony of Maude E. S. Dugent, who had been recalled by the appellee to testify as to statements made to her by the decedent, after the close of the appellants' case, the proffer made by the appellee during her presentation of the case having been rejected by the court. The court reconsidered the proffer and allowed her to be recalled. The appellants called ten witnesses to rebut the testimony of the appellee's witness. The appellants' counsel vigorously protested this ruling of the lower court. This is a matter which rests entirely in the discretion of the trial court, from which no appeal lies. *Guyer v. Snyder,* 133 Md. 19; *Leland v. Empire Engineering Co.,* 135 Md. 208; *East Baltimore Transfer Co. v. Goeb,* 140 Md. 534.

This disposes of all the questions arising on the evidence, except the 159th, which was to the objection by the appellee to the admission of a letter from Maude Dugent to the decedent, written April 2nd, 1925. This letter was a very personal one from the witness to the decedent. It contains nothing at issue in this case, and while it may be said to reflect somewhat on the witness, it does not of itself affect her credibility, and is not the way the law points out to discredit a witness.

This leaves only the 165th exception, which is to the re-

fusal of the appellants' first, 1-a, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, fourteenth, fifteenth, and eighteenth prayers; the appellants' thirteenth, sixteenth, and seventeenth prayers having been granted. We find no error in the trial court's rulings on the prayers. The law applicable to the facts in this case were fairly stated in the appellants' thirteenth, sixteenth, and seventeenth prayers, which were granted.

*Rulings affirmed.*