BROWNING *v.* BROWNING, Administrator, Etc.

[No. 142, September Term, 1960.]

*Decided March 8, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Horace P. Whitworth, Jr.,* for the appellant.

*Lewis R. Jones,* with whom was *E. Ray Jones* on the brief, for the appellee, the Administrator of the decedent's estate.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from the decision of the Circuit Court for Garrett County, Maryland, sitting without a jury, in the matter of an issue sent up to that Court by the Orphans' Court of that County, which issue was as follows:

> "Was Richard Stabler Browning, decedent, legally and lawfully married on the 14th day of January, 1959, to the Petitioner, Helen Elizabeth Browning, and was said marriage to Helen Elizabeth Browning existing at the time of his death as a legal and lawful marriage so that your Petitioner at the time of his death became his surviving widow?"

This issue the Court answered "no".

The only question presented by the appellant (petitioner below), is whether the evidence presented was sufficient in law to sustain the finding of the Court; specifically, whether it was sufficient to prove a prior marriage by the decedent, Richard Stabler Browning, to Margaret Lewis Browning, and that said prior marriage had not been dissolved at the date of the alleged second marriage to Helen Elizabeth Browning.

The evidence shows that a marriage ceremony was performed by Father J. F. Murphy of St. Joseph's Parish in Spokane, Washington, on November 28, 1912, between Richard Browning, son of Richard T. Browning, and Margaret Lewis, daughter of Wilhelm Lewis. This was shown by a certificate from St. Joseph's Parish, which was properly authenticated. They and their children lived together until 1943 when, because of economic reasons, it was impossible to continue to maintain the home, and Margaret Lewis Browning moved to White Plains, New York, to live with one of her daughters. There were numerous subsequent visits within the family, particularly of Margaret Lewis Browning and her husband, the decedent; and other transactions showing the continuance of the marriage relationship. There was never any evidence of divorce or dissolution of this marriage, but on January 14, 1959,

after the appellant applied for and obtained a marriage license, she and the decedent, then eighty-three years of age, went through the purported marriage ceremony in Frostburg, Maryland. The decedent died on February 15, 1959. Both Margaret Lewis Browning and the appellant survived the decedent, and each claimed to be his lawful widow.

One of the appellant's contentions is that the marriage in 1912 was not legally established in the court below. She points out the absence of proof of the issuance of a civil marriage license and record of performance of the marriage from the civil authorities. The case was apparently tried on the assumption that the law of Washington and the law of Maryland were the same and that the case should be determined in accordance with the law of Maryland. We shall treat it as the parties have done.

It is well established that the failure to procure a marriage license does not have the effect of rendering the marriage void. *Feehley v. Feehley,* 129 Md. 565, 99 Atl. 663. The requirement of the license preliminary to marriage is wholly of statutory origin. A religious ceremony at common law was sufficient to make the marriage lawful according to decisions of this Court. *Jackson v. Jackson,* 80 Md. 176, 30 Atl. 752; *Richardson v. Smith,* 80 Md. 89, 93, 30 Atl. 568; *Denison v. Denison,* 35 Md. 361.

The marriage ceremony was valid so that the absence of the marriage license does not affect the validity of this marriage. *Feehley v. Feehley, supra.* As stated by this Court in *Schaffer v. Richardson's Estate,* 125 Md. 88, 92, 93 Atl. 391:

> "When it is shown that there has been a formal ceremony of marriage, such as that proved with respect to the marriage of September 14, 1855, the law presumes the competency of the parties to enter into the marriage contract, and when it is shown that the marriage was solemnized by a person acting as minister and followed by cohabitation it will be presumed that the person assuming to officiate at the ceremony was authorized to perform it, that a license was properly issued, and that in the absence of addi-

tional or countervailing proof it will be presumed that all the proceedings were regular and valid."

When a marriage has been proven there is a presumption in favor of its continuance. However, the fact, if shown, that either of the parties has been previously married, and that the other party to such a previous marriage was still living at the time of the second marriage, the presumption is that the former marriage had been legally dissolved, and the burden of proving that the former marriage had not been dissolved rests upon the party seeking to impeach the second marriage. *Schaffer v. Richardson, supra.* This burden must be so strong as to overthrow the strong presumption in favor of innocence and legitimacy and the evidence must be sufficient to establish a mental conviction which amounts to a moral certainty. *Bowman v. Little,* 101 Md. 273, 61 Atl. 223. However, in the case of *Schmeizl v. Schmeizl,* 184 Md. 584, 42 A. 2d 106, this court, through Judge Markell, at page 597 commenting on the presumption of divorce states:

"If a 'presumption of divorce' is applied blindly without due regard to the facts of the particular case, the divorce becomes a fiction, and the presumption a 'conclusive presumption,' i. e., a rule of substantive law by which a bigamous marriage supplants a lawful marriage."

Cf. *Mitchell v. Frederick,* 166 Md. 42, 46, 170 Atl. 733. In *Dukes v. Eastern Tar Products Corp.,* 197 Md. 564, 80 A. 2d 39, the court held that proof of a second marriage and birth of issue raises a presumption of divorce, but it is not conclusive.

The case of *Bowman v. Little, supra,* is the one relied on by the appellant in this case, but the facts are not the same. In that case the plaintiff failed to establish the identity of the parties in the marriage certificate to overcome the strong presumption of law in favor of innocence and legitimacy, and consequently, did not make a proper case to be submitted to the jury. The plaintiff having failed to overcome the aforesaid presumptions the court went on to hold that testimony of witnesses as to the prior marriage and subsequent cohabitation

was inadmissible. However, in his supplemental opinion Judge McSherry, commenting on page 312, stated:

"The standard or measure by which the legal sufficiency of evidence is ascertained is not unvarying and inflexible, and hence is not the same in every case."

Moreover, it has been a well established rule of this Court that where the validity of a marriage is in question, the declarations of the parties themselves, if deceased, that they were or were not married, provided they were made *ante litem motam* are admissible evidence of the fact declared.

In the case of *Hensel v. Smith*, 152 Md. 380, 136 Atl. 900, the plaintiff, Elsa Dugent Smith, filed a claim in the Orphans' Court for a widow's share of the estate of G. Edgar Smith, deceased. The appellants contended that he had died unmarried and without issue. The appellee produced an application for a marriage license signed by "G. E. Smith" and the license issued in pursuance thereof authorizing the marriage of "George E. Smith to Elsie G. Dugent." There was also offered in evidence the marriage records of a Delaware church which showed that George Edgar Smith had been married there on the same day the license was issued. The appellee's sister testified over objection that the decedent had declared to her that he and her sister had been married and that it was to be kept a secret. In holding the evidence in the case legally sufficient to go to the jury the court in distinguishing that case from *Bowman v. Little, supra*, said that the exclusion in the *Bowman* case of the admissions and declarations of the parties and the requirement that identity be proved by other testimony was definitely influenced by the fact that: "If the claim had been successful it would have resulted in bastardizing the offspring of the second marriage." pg. 390. It should be pointed out that in both the *Bowman v. Little* case and *Hensel v. Smith* case, the problem was not one of admissibility of the evidence but simply as to its legal sufficiency.

In the instant case, unlike the *Bowman* case, there is no child born of the second marriage. There is ample proof supplied in the record that there was a valid marriage between

the decedent, Richard Stabler Browning, and Margaret Lewis Browning, which took place on November 25, 1912, as well as the identity of the parties and of subsequent cohabitation.

James J. Browning, son of the decedent and Margaret Lewis Browning, was permitted to testify, over objection, that his father and mother were Richard Stabler Browning and Margaret Lewis Browning; that he was born in Harrison, Idaho, May 16, 1907; and that his father and mother moved to Spokane, Washington, where he started to school at the age of six and remained through the fourth grade. He remembered an occasion when he went to church with his father and mother, but did not remember a marriage ceremony as such. He did remember the candles in the church, and that the priest was there. He knew that his father was a Catholic but did not think his mother was. The translation of the marriage record by Father Carney, who testified, verifies the disparity of religious affiliation. The record of St. Joseph's Parish, Spokane, Washington, shows that at the same time that the marriage ceremony took place three children alleged to have been born to Richard Stabler Browning and Margaret Lewis were baptized. James further testified that the family lived together in Spokane until they moved to Cumberland, Maryland, where they likewise lived together until they moved to near Rawlings, Maryland, where his father was a game warden. He also testified that when he was about twenty years old his father and mother moved back to Mt. Royal Avenue in Cumberland; that after he finished school at Potomac State he went down to Alabama to school and returned on vacations and Christmas holidays when the family was then living in Cumberland, where they remained until his mother, in 1942 or 1943, moved to White Plains, New York. Finally the witness testified that he corresponded back and forth with his father and mother, and visited his father both in New York and in Oakland. He identified pictures of his father and mother.

Robert B. Garrett, a nephew of the decedent, testified over objection that the name of the father of the decedent was Richard Thomas Browning, that the decedent had told him about the marriage in Spokane and had given him the name of the officiating priest and that he knew of his own knowledge that the decedent was in Spokane.

Margaret C. Browning, a sister of the decedent, testified that the decedent told her about the marriage and gave the name of Father Murphy.

We think the learned trial judge was correct in considering the evidence of admissions and declarations of the deceased to witnesses other than his spouse, in reaching his determination that there was a valid marriage in 1912 which had not been terminated prior to the decedent's death. Moreover, they were admissible as evidence of pedigree as an exception to the hearsay rule. *Hensel v. Smith, supra; Craufurd v. Blackburn,* 17 Md. 49, 56.

There was, of course, no presumption of legitimacy of issue involved in this case. We think the evidence produced by the appellee was sufficient to overcome any presumption as to the validity of the second marriage, was sufficient to rebut the presumption of a divorce, as well as innocence on the part of the appellant.

As proof of the continuance of the first marriage until the death of the decedent and that there was never any divorce, the appellee produced the testimony of James J. Browning, Robert B. Garrett, George T. Browning, Ellen E. Dittero, and Mazie Kitzmiller, all of whom testified there had been no divorce. They were in position to have knowledge if there had been. Richard L. Davis, Clerk of the Circuit Court for Garrett County, testified that there had been no divorce between the parties in Garrett County, which was the residence of Richard Stabler Browning from 1943 until the date of his death. The execution of deeds of conveyance by Richard Stabler Browning and Margaret Lewis Browning, as husband and wife, as late as September 20, 1957, is further evidence refuting the presumption of divorce.

There are further circumstances in this case which have a bearing on the application of conflicting presumptions. Here we have a fifty-seven year old woman applying for and obtaining a marriage license for herself and an eighty-three year old man, and a purported marriage which she attempted to keep secret by having the license marked "don't publish".

The record indicates that a letter admitted into evidence and written by the appellant caused the lower court to remark:

"From this it seems clear that she cannot be said to have been entirely innocent of any knowledge of a previous marriage."

The question involved was the sufficiency of the evidence to overcome the presumptions as stated above. It was one of both law and fact to be decided by the trial judge, sitting without a jury, who had the opportunity to observe the witnesses who testified, and to weigh the evidence. We think the evidence was amply sufficient to justify his determination and find no reason to disturb the result.

*Ruling affirmed,*
*appellant to pay the costs.*