**Mary B. McKNIGHT**

v.

**Richard S. SCHWEIKER,[1] Secretary of Health and Human Services.**

**Civ. A. No. J–79–1427.**

United States District Court,
D. Maryland.

June 17, 1981.

---

**1.** Richard S. Schweiker has succeeded Patricia R. Harris (successor to Joseph A. Califano, Jr.), as Secretary of Health and Human Services (prior to May 4, 1980, the Department of Health, Education and Welfare), and, pursuant to 42 U.S.C. § 405(g) (1976), the appropriate substitution has been made.

Peter M. D. Martin, Dennis W. Carroll, Baltimore, Md., for plaintiff.

John F. Hyland, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

SHIRLEY B. JONES, District Judge.

Plaintiff, Mary B. McKnight, filed this action through her attorneys *in forma pauperis* pursuant to 28 U.S.C. § 1915 and under 42 U.S.C. § 405(g) for review of a final decision of the Secretary of Health and Human Services denying plaintiff's claim for Widow's Benefits under Title II of the Social Security Act. This case is presently pending on cross motions for summary judgment on which no hearing is deemed necessary. Local Rule 6.

The plaintiff, Mary B. McKnight, ceremonially married George McKnight on August 8, 1937, in Baltimore, Maryland. (Tr. 131). They lived together in Baltimore until George's death on August 29, 1977 (Tr. 46), giving birth to and raising two children by that marriage. (Tr. 45).

On April 1, 1975, plaintiff filed for Wife's Insurance Benefits under the Social Security Act. (Tr. 106). Her application was approved. (Tr. 110). Payments to plaintiff

were determined by an administrative schedule. George's earnings and other information supplied to the Social Security Administration by George in his April 1, 1975 application for retirement benefits (Tr. 5) determined the benefit rates.

On September 16, 1977, Lottie G. McKnight of Sumter, South Carolina, the adverse claimant below, filed for Widow's Insurance Benefits with the Social Security Administration. (Tr. 112). She informed the Administration that George McKnight died on August 29, 1977, and she claimed to be George's legal wife. (Tr. 112). That marriage, according to Lottie, took place on March 18, 1930, in Sumter, South Carolina. (Tr. 113). Lottie stated George last lived with her in Sumter in 1932. (Tr. 113).

The Social Security Administration determined in May, 1978 (Tr. 117), and formally announced in June, 1978, that under the Social Security Act, Lottie was George's legal widow and she, not plaintiff, was entitled to the Widow's Insurance Benefits. As a result of this decision, May, 1978 was the last month for which plaintiff was entitled to benefits, 42 U.S.C. § 416(h)(1)(B), and her receipt of them was immediately terminated. (Tr. 125).

It was further determined that an overpayment had occurred to plaintiff due to her failure to notify the Social Security Administration of the death of the wage earner (George McKnight). By statutory regulation, death triggers an automatic reduction in benefits for the surviving spouse. (Tr. 123). However, on September 22, 1978, plaintiff filed a request for a hearing (Tr. 38) and sought a waiver of recovery of the overpayment. (Tr. 38). A hearing was held on December 28, 1978 (Tr. 30), and on January 15, 1979, the Administrative Law Judge (ALJ) found plaintiff without fault in causing the overpayment and granted a waiver of recovery for the outstanding balance. (Tr. 20).

Mary B. McKnight then sought administrative review of the ALJ's decision finding her not to be George's legal widow and, therefore, not entitled to Widow's Insurance Benefits. The Appeals Council af-firmed the prior decisions of the ALJ on June 15, 1979, and refused to grant a further hearing. (Tr. 12).

The issues to be decided are whether the Secretary was correct in ruling Mary B. McKnight is not the legal widow of George McKnight for the purposes of the Social Security Act, 42 U.S.C. § 416(h)(1)(A), or in the alternative, whether plaintiff is entitled to a portion of the Widow's Benefits as the "deemed valid" widow of George McKnight under 42 U.S.C. § 416(h)(1)(B). For the reasons set forth below, the plaintiff's motion for summary judgment will be granted and the defendant's motion denied.

In order to be eligible for Widow's Insurance Benefits, the claimant must establish that she is either the legal widow or deemed widow of the insured individual. 42 U.S.C. § 402(e). The claimant is a legal widow of a fully or currently insured individual for the purposes of the Act if the insured individual is dead and if the courts of the state in which he was domiciled at the time of his death would find that the applicant and the insured individual were then validly married. 42 U.S.C. § 416(h)(1)(A). This issue is, therefore, one of state law. Because George McKnight was domiciled in Maryland when he died, Maryland law is controlling.

If, by the law of Maryland, Mary B. McKnight is not the legal wife of George McKnight, but it is nevertheless established "to the satisfaction of the Secretary" that she in good faith went through a valid marriage ceremony with the insured individual which resulted in a purported marriage, and but for a legal impediment not known to her at the time of the ceremony would have been validly married, and if the insured was living with her at the time of his death, then the marriage will be "deemed valid". 42 U.S.C. § 416(h)(1)(B). Benefits will flow accordingly. The term "legal impediments" is defined in the regulations to include insufficiencies resulting from the lack of dissolution of a previous marriage. 42 U.S.C. § 416(h)(1)(B).

Because "deemed valid" marriages are established "to the satisfaction of the Secretary", the decision is discretionary and one of fact. The findings of the Secretary as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). The phrase "substantial evidence" has been defined by the Fourth Circuit Court of Appeals to be:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'.

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972), *quoting Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In contrast to this factual determination, the decision as to whether Maryland law would find plaintiff a legal widow, is a legal question. "The presumptions of marriage and legitimacy, and of continuance of marriage are presumptions of law." *Schmeizl v. Schmeizl*, 184 Md. 584, 42 A.2d 106 (1945). When a legal question is presented, the court may review the Secretary's final decision for an incorrect application of the law. *Storck v. Weinberger*, 402 F.Supp. 603 (D.Md.1975); *Lewis v. Weinberger*, 402 F.Supp. 632 (D.Md.1975); 5 U.S.C. § 706(2)(A).

In the state of Maryland, when a marriage has been proven to exist and it is shown that either of the parties to that marriage was previously married and that the other party to the first marriage was still living at the time of the second marriage, there is a strong presumption that the former marriage has been legally dissolved. The burden of proving that the former marriage had not been dissolved rests wholly on the party seeking to impeach the second marriage. *Browning v. Browning*, 224 Md. 399, 168 A.2d 506 (1961); *Schaffer v. Richardson's Estate*, 125 Md. 88, 93 A. 391 (1915).

The burden to overthrow the presumption favoring the second marriage is so strong that the evidence must be sufficient so as to amount to a moral certainty. *Bowman v. Little*, 101 Md. 273, 61 A. 223 (1905).

The presumption of marriage ... is one of the strongest presumptions known to the law .... The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence .... The presumption in law is not lightly to be repelled. It is not to be broken in upon, or shaken by a mere balance of probability. The evidence for the purpose of repelling it must be strong, distinct, satisfactory, and conclusive.

*Schmeizl v. Schmeizl, supra, quoting Hynes v. McDermott*, 91 N.Y. 451, 459, 43 Am.Rep. 677 (1883).

In the case at bar, the ALJ concluded that Lottie McKnight had successfully established the validity of a marriage between herself and the wage earner, George McKnight. This was based on her introduction into evidence of a marriage certificate (Tr. 130) and license (Tr. 129), and his receipt of a birthday card in 1963, signed "Your wife Lottie". (Tr. 170). The Court shall discuss each of these findings *seriatim*.

The marriage certificate and license offered by Lottie McKnight show only a probability, and not "strict proof", that the parties named therein and the parties in the instant case are the same. The birthdate sworn to on the marriage license by Lottie McKnight is not the same as that listed on her Social Security application for benefits. (Tr. 116). In addition, the George McKnight named in the 1930 marriage license stated he was twenty-one years old. (Tr. 182). In contrast, the deceased wage earner's birth certificate shows date of birth which conflicts with the marriage license. (Tr. 155). Further, the adverse party spells her maiden name differently from the Lottie G. McKnight on the 1930 marriage certificate. (Tr. 182).

The Appeals Council found that because these discrepancies would cause no statutory invalidation of a marriage otherwise valid at common law and because no evidence had been submitted showing the adverse party and the George McKnight listed on the marriage license were not of legal age to be married at the date of the license, the discrepancy should be discounted. (Tr. 7).

Though I agree that discrepancies such as these cause no statutory invalidation of a marriage otherwise valid at common law, I disagree that they should be discounted. Proof of the marriage between the deceased wage earner and the adverse party at the time and place alleged is absolutely indispensable. It must not be forgotten that the burden of proof is on the party asserting the invalidity of the second marriage to establish by "strict proof" the prior marriage as a ground for the annulment of the second. Though it is not probable that someone impersonated George or Lottie McKnight in 1930, and though it is probable that there might have been a mistake by the parties as to their dates of birth on those certificates, and though it is not probable that the delineation given in the certificates of the persons mentioned therein would have corresponded so closely with the names and approximate ages and spellings of the deceased wage earner and the adverse party unless they were the identical parties involved, the sum of the probabilities remains only a probability. *Bowman v. Little, supra*, 101 Md. at 290, 61 A. at 226. These probabilities are legally insufficient to overcome the presumption of the validity of the second marriage when strict proof is required.

A conclusion logically drawn from premises which are themselves mere probabilities, must of necessity be only a mere probability also, because a conclusion, to be formal, must always be contained in the premises, and probabilities can never contain a certainty.

*Bowman v. Little, supra*, at 290, 61 A. at 226.

The Appeals Council's decision that these discrepancies should be disregarded on the further ground that no evidence has been submitted by the plaintiff to show that the Lottie G. McKnight and the George McKnight listed on the marriage license were not of legal age to be married at that time is without foundation of law. The burden rests on the adverse party, not on the plaintiff herein, to show by strict proof and satisfactory and cogent evidence that the legal standard was in fact met. *Bowman v. Little, supra*, at 289, 61 A. at 225; *Schaffer v. Richardson's Estate, supra*, 125 Md. at 93, 93 A. at 392. This strict proof is lacking. Only a probability remains, and the presumption favoring the second marriage stands firm.

■ In a suit for nullity of marriage by reason of a former marriage, strict proof of the identities of the parties involved is requisite. *Bowman v. Little, supra*. Admissions of the parties themselves, if deceased, that they were or were not married, are admissible. *Hensel v. Smith*, 152 Md. 380, 389, 136 A. 900, 904 (1927). The question of whether the declaration of the deceased *ante litem mortam* that he had been married prior to his marriage with plaintiff meets the legal standard of strict proof necessary to overcome the presumptions in favor of the second marriage involves a factual determination and an application of the factual findings to the legal standard. In other words, does substantial evidence exist within this admission to absolutely identify the parties in the alleged former marriage, and were these parties the deceased wage earner and the adverse party?

■ In his evaluation of the evidence the ALJ noted that the deceased wage earner admitted to a prior marriage. Based on this admission and on the claimant's unsuccessful attempts to disprove the earlier marriage, both the ALJ and the Appeals Council ruled in the adverse party's favor. This was error. The findings of fact as far as they were determined may well have been supported by substantial evidence. However, the identity of the alleged former wife was not then revealed. Since an absolute identity was never established, there is only a possibility or probability of a prior

marriage between the deceased wage earner and the adverse party. A probability does not establish a mental conviction amounting to a moral certainty.

Though it is not the duty of this Court to substitute its opinion for that of the Secretary on strict issues of fact, it is worth noting that the admission was made when the deceased wage earner was intoxicated. (Tr. 47). When sober, he denied a former marriage (Tr. 57), and all available documents, including those filed with the Social Security Administration are supportive of that position. (Tr. 102, 131, 133, 156, 157, 166, and 197).

The Secretary has argued that the receipt of the birthday card in 1963 by the wage earner (Tr. 170), and the admission that he had at one time lived with someone named Lottie (Tr. 141–142) validate the alleged prior marriage. Again, this evidence establishes only a probability and not a legal certainty, of a prior relationship between the deceased wage earner and the adverse party. An absolute identity and marriage is not established when an interested party claiming to be someone's wife contacts that second party and alleges the relationship.

The case of *Bowman v. Little, supra,* involved a similar situation. G. Walter Bowman of Hagerstown, Maryland, died in 1903, leaving a widow to whom he had been married by legal ceremony, and a child. Catharine Bowman, the plaintiff, alleged she was the lawful widow. To establish the prior marriage in Camden, New Jersey, between a G. Walter Bowman and the plaintiff, testimony was offered by the plaintiff's mother that she had visited them for several days at their house while they were married. A physician testified the plaintiff publicly represented herself as the wife. Because there was no evidence the deceased was the identical person who was married in Camden, and the plaintiff was not absolutely identified to a moral certainty as the woman who was then married, the evidence was found legally insufficient to rebut the presumptions in favor of the second marriage.

Finally, identity cannot be proven solely by admissions of the parties in cases where the presumptions of innocence and legitimacy are rebutted. The identity must be proven by testimony of witnesses other than the parties—that is by witnesses who can speak of the facts from their own personal knowledge. *Bowman v. Little, supra,* 101 Md. at 294, 61 A. at 227. The adverse party presented no witnesses or depositions by third persons in her behalf.

I, therefore, conclude that the adverse claimant, Lottie G. McKnight, failed to adequately demonstrate by cogent and satisfactory evidence so strong as to amount to a moral certainty the validity of a marriage between herself and the deceased wage earner.

Even assuming a valid marriage between the adverse party and George McKnight, however, there is still a strong presumption that the prior marriage has been legally dissolved. Though the presumption is not conclusive, *Dukes v. Eastern Tar Products,* 197 Md. 564, 80 A.2d 39 (1951), evidence of lack of divorce is nevertheless required to overcome that presumption. *Schmeizl v. Schmeizl, supra,* 184 Md. at 596, 42 A.2d at 112. This burden rests wholly on the adverse party. *Browning v. Browning, supra; Schaffer v. Richardson's Estate, supra.*

The Secretary, therefore, erred in arguing that "plaintiff has produced no record of any divorce terminating such marriage, nor even of any petition being filed requesting the termination of said marriage. Plaintiff has, therefore, failed to meet her burden of proof." (*See* Defendant's Brief, filed October 17, 1980, at 8). The fact that there was no allegation of divorce or evidence of divorce, as relied on by the ALJ (Tr. 19), is of no consequence. The presumption is that the prior marriage has been dissolved. The adverse party has the burden of overcoming this presumption with strong and convincing evidence.

The only evidence offered in this regard was the plaintiff's failure to locate a divorce certificate. (Tr. 142, 143). This search failed, however, because the plaintiff

lacked proof as to the validity of the alleged marriage itself. (Tr. 141). No true search could be made. The burden was on the adverse party to first offer proof of marriage, and having satisfactorily shown a marriage, to then demonstrate that a careful but fruitless search of the records was made in those places where a divorce might have been filed. Additional documentation or testimony by third persons independently apprised of the marriage and of its continuance would then satisfy the standard. "Any secret marriage, not followed by public matrimonial cohabitation and public recognition, invites suspicion, whether a 'common law' marriage (*State of Maryland v. Baldwin*, 112 U.S. 490, 495, 5 S.Ct. 278, 28 L.Ed. 822) or a ceremonial marriage (*Brooke v. Brooke*, 60 Md. 524, 535)." *Schmeizl v. Schmeizl, supra*, 184 Md. at 594, 42 A.2d at 110. Without this evidence, there is not a shred of proof to overcome the strong legal presumption that a divorce occurred.

I, therefore, hold that the adverse claimant also failed to meet her burden of overcoming by cogent and satisfactory evidence the legal presumption of dissolution of her alleged prior marriage. Further, the ALJ erred in placing this burden upon the plaintiff herein.

These presumptions in favor of the continuance of a proven marriage and of divorce or dissolution of a prior marriage are among the strongest in the law. Conclusions based on a sum of probabilities do not establish the legal certainty requisite to overcome them. The burden is on the party asserting the validity of the first and the annulment of the second marriage. The burden was not met in this case.

Because of these findings it is not necessary to decide whether or not Mary B. McKnight satisfied the "deemed widow" criteria of 42 U.S.C. § 416(h)(1)(B). This section is, therefore, not discussed.

Accordingly, a separate Order will be issued granting plaintiff's motion for summary judgment and denying the defendant's motion for summary judgment.